#26096-rev in pt & aff in pt-GAS

**2013 S.D. 2**

## IN THE SUPREME COURT

## OF THE

## STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JOHN A. ROLFE,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.


ELLERY GREY
Rapid City, South Dakota                    Attorney for defendant
    and appellant.

* * * *

ARGUED OCTOBER 1, 2012

OPINION FILED **01/09/13**

SEVERSON, Justice

[¶1.]      John A. Rolfe was convicted of three counts of first-degree rape of a minor and 12 counts of possessing, manufacturing, or distributing child pornography.  The trial court sentenced Rolfe to three concurrent life sentences without parole and 12 consecutive 10-year sentences in the South Dakota State Penitentiary.  Rolfe appeals, raising two issues.  First, Rolfe argues that the trial court violated his right to a public trial because it excluded the general public from the courtroom when the child victim testified about sexual abuse.  Second, Rolfe argues that the State lacked legal authority to issue subpoenas to Midcontinent Communications prior to his indictment.  Regarding the right to a public trial, we remand the case to the trial court to supplement the record with the facts and reasons for the closure of the courtroom during the victim's testimony.  Further, we hold that Rolfe has no privacy interest in the information obtained by subpoenas issued to Midcontinent Communications.

## BACKGROUND

[¶2.]      In May 2009, the Pennington County Internet Crimes Division conducted an undercover investigation, looking for persons distributing or possessing child pornography.  By using special software to conduct the investigation, law enforcement officers found a person who appeared to possess child pornography at a specific IP address.  The person that officers suspected of possessing child pornography used LimeWire, a person-to-person file sharing program, to share files.  Investigators used the software program to locate and download three shared files containing child pornography.

[¶3.] In June 2010, using the same software, Pennington County investigators again made contact with a person using the same IP address. Investigators located and downloaded additional shared files containing child pornography. They also determined that the IP address was assigned to a Midcontinent subscriber.

[¶4.] Also in June 2010, Pennington County investigators briefed a deputy state's attorney on their investigation. The deputy state's attorney issued subpoenas to Midcontinent, requesting the email address and personal information of the subscriber associated with the IP address where officers found child pornography.

[¶5.] Shortly after receiving the subpoenas, Midcontinent contacted investigators and provided them with a phone number and email address for an account in Rapid City. Using the phone number provided, investigators found that the number was registered to John A. Rolfe, who resided at the address provided by Midcontinent that was associated with the specific IP address. The deputy state's attorney issued another subpoena, directing Midcontinent to provide information on any other owners of accounts associated with the original account.

[¶6.] On July 19, 2010, the trial court granted a search warrant for Rolfe's residence in Rapid City. Investigators conducted the search on July 20 and seized cell phones, letters, cameras, memory flashcards, and two laptop computers. Investigators conducted a forensic analysis of these items. On the laptop found in Rolfe's bedroom, investigators discovered child pornography involving A.F., the 12-year-old daughter of Rolfe's son's live-in girlfriend. A.F. later told investigators that

Rolfe had drugged, sexually assaulted, and photographed her over several years at his home and on trips around the state. In addition, A.F. told investigators that Rolfe filmed her changing out of her clothing on one trip outside of the state.

[¶7.] On August 19, 2010, a Pennington County grand jury indicted Rolfe on three counts of first-degree rape and 12 counts of possessing, manufacturing, or distributing child pornography.

[¶8.] Prior to trial, Rolfe filed a motion to suppress the evidence found in this case through the search of Rolfe's home and computer. Rolfe argued that the subpoenas ordering Midcontinent to release the name and contact information associated with the IP address were issued in violation of the law. Rolfe further argued that information collected as a result of the improper subpoenas was used to obtain search warrants and collect evidence at Rolfe's home. Thus, the evidence collected was "fruit of the poisonous tree" and should be excluded from use at trial.

[¶9.] The trial court denied Rolfe's motion to suppress. The court found that an IP address is a unique number that identifies a computer and its location in connection to the Internet. The court determined that Rolfe had no Fourth Amendment expectation of privacy in his IP address subscriber information because he publicly disseminated the information. Finally, the court concluded that even if the method of subpoenaing the IP address and records from Midcontinent was invalid, the court would not sanction the State by suppressing the evidence in the case.

[¶10.] The court held a jury trial in this case from April 18 through 21, 2011. At the beginning of the third day of trial, the State invoked SDCL 23A-24-6, a

statute that authorizes the closure of a courtroom when a child testifies about a sexual offense committed against that child or another child. The statute allows the court to exclude the general public except the parties' attorneys, victim or witness assistant, the victim's parents or guardians, officers of the court, and representatives of the media. Rolfe objected to the closure as a violation of his Sixth Amendment right to a public trial. The trial court overruled the objection and allowed the courtroom to be closed during A.F.'s testimony.[1]

[¶11.]    The jury found Rolfe guilty of three counts of first-degree rape of A.F. and 12 counts of possessing, manufacturing, or distributing child pornography. The trial court sentenced Rolfe to three concurrent life sentences without parole and 12 consecutive 10-year sentences in the South Dakota State Penitentiary.

[¶12.]    Rolfe appeals, raising two issues. First, Rolfe argues that the trial court violated his right to a public trial when it excluded the general public from the courtroom during A.F.'s testimony. Second, Rolfe argues that the State lacked legal authority to issue subpoenas to Midcontinent Communications prior to his indictment.

### STANDARD OF REVIEW

[¶13.]    "Constitutional interpretation is a question of law reviewable de novo." *Steinkruger v. Miller*, 2000 S.D. 83, ¶ 8, 612 N.W.2d 591, 595 (citing *State v. Beck*, 1996 S.D. 30, ¶ 6, 545 N.W.2d 811, 812). Statutes are presumed to be constitutional

---

1.    The record notes few "interested spectators" attending the trial, other than occasional officers of the court. The only specific spectators identified who were excluded by the order were the victim's grandparents.

and the challenger has the "burden to prove beyond a reasonable doubt that a statute violates a constitutional provision." *Id.* (citing *Kyllo v. Panzer*, 535 N.W.2d 896, 898 (S.D. 1995)). "[W]e review the constitutionality of a statute only when it is necessary to resolve the specific matter before us, and then only to first decide if the statute can be reasonably construed to avoid an unconstitutional interpretation." *Id.* (citing *City of Chamberlain v. R.E. Lien, Inc.*, 521 N.W.2d 130, 131 (S.D. 1994)).

[¶14.] A violation of the right to a public trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991). *See also Waller v. Georgia*, 467 U.S. 39, 49 n.9, 104 S. Ct. 2210, 2217 n.9, 81 L. Ed. 2d 31 (1984). "'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Fulminante*, 499 U.S. at 310, 111 S. Ct. at 1265 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460 (1986)).

[¶15.] "Statutory interpretation is also a question of law reviewed under the de novo standard." *State v. Wilson*, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180 (citing *Steinberg v. S.D. Dept. of Military & Veterans Affairs*, 2000 S.D. 36, ¶ 6, 607 N.W.2d 596, 599). We review the trial court's "application of the law de novo, and the ultimate decision to close a [court] proceeding for an abuse of discretion." *Rapid City Journal v. Delaney*, 2011 S.D. 55, ¶ 9, 804 N.W.2d 388, 392.

## DISCUSSION

[¶16.] **1.     Whether Rolfe's right to a public trial was violated.**

[¶17.]     Rolfe argues that his Sixth Amendment right to a public trial was violated when the trial court excluded the general public during A.F.'s testimony. The Sixth Amendment provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. *See also* S.D. Const. art. VI, § 7 ("In all criminal prosecutions the accused shall have the right to . . . a speedy public trial . . . ."). In general, courts conduct public trials "'for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'" *Waller*, 467 U.S. at 46, 104 S. Ct. at 2215 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380, 99 S. Ct. 2898, 2906, 61 L. Ed. 2d 608 (1979)). Recently, the United States Supreme Court reinforced the importance of public trials in *Presley v. Georgia*, where it stated that "[t]he public has a right to be present whether or not any party has asserted the right." 558 U.S. 209, ___, 130 S. Ct. 721, 724-25, 175 L. Ed. 2d 675 (2010).

[¶18.]     The right of access to a criminal trial is not absolute. *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606, 102 S. Ct. 2613, 2620, 73 L. Ed. 2d 248 (1982). "'The right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.'" *Presley*,

558 U.S. at \_\_\_, 130 S. Ct. at 724 (quoting *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215). "'Such circumstances will be rare, however, and the balance of interests must be struck with special care.'" *Id.* (quoting *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215).

[¶19.]     One such circumstance where trial courts may weigh closure is in cases where a child victim is testifying about sexual abuse. Trial courts can consider on a case-by-case basis whether closure of a courtroom is necessary to protect a child victim of sexual abuse. *Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621. A trial court should weigh factors such as the "victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Id.* (footnote omitted). South Dakota has a specific statute to address closing a courtroom for child victim testimony. SDCL 23A-24-6 provides:

> Any portion of criminal proceedings, with the exception of grand jury proceedings, at which a minor is required to testify concerning rape of a child, sexual contact with a child, child abuse involving sexual abuse, or any other sexual offense involving a child may be closed to all persons except the parties' attorneys, the victim or witness assistant, the victim's parents or guardian, and officers of the court and authorized representatives of the news media, unless the court, after proper hearing, determines that the minor's testimony should be closed to the news media or the victim's parents or guardian in the best interest of the minor.

This section allows the trial court discretion to determine who should remain in the courtroom when a child testifies about a sexual offense. It also allows the trial court to minimize the number of spectators in the courtroom during testimony while allowing for public observation of the trial via the news media.

[¶20.]    However, in order to close a courtroom during any testimony, the United States Supreme Court has held that certain procedures must be followed to protect the defendant's Sixth Amendment right to a public trial. In order to close all or portions of a public trial, the party seeking closure of the proceeding must (1) "advance an overriding interest that is likely to be prejudiced," (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) "[the trial court] must make findings adequate to support the closure." *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216. The interest and specific findings should be articulated so that a reviewing court can make a determination about whether closure was proper. *Press-Enterprise Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510, 104 S. Ct. 819, 824, 78 L. Ed. 2d 629 (1984).

[¶21.]    Our recent decision, *Rapid City Journal v. Delaney*, holding that a trial court impermissibly closed a trial, is a civil case, but has some application in the present case. 2011 S.D. 55, ¶¶ 29, 32, 804 N.W.2d at 399-400. *Delaney* concluded that the trial court abused its discretion because it "failed to 'articulate . . . findings specific enough that a reviewing court could determine whether the closure order was properly entered.'" *Id.* ¶ 22, 804 N.W.2d at 396. "[W]ithout specific findings, meaningful review is illusive." *Id.* ¶ 28, 804 N.W.2d at 399.

[¶22.]    Although the United States Supreme Court has not addressed the issue, some federal circuits have modified the *Waller* test, based on partial versus

total closure[2] of the courtroom. "'When a trial judge orders a partial, as opposed to a total, closure of a court proceeding at the request of one party, a "substantial reason" rather than *Waller's* "overriding interest" will justify the closure' because a partial closure does not 'implicate the same secrecy and fairness concerns that a total closure does.'" *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994) (quoting *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992)). *See also United States v. Petters*, 663 F.3d 375, 382-83 (8th Cir. 2011); *United States v. Sherlock*, 962 F.2d 1349, 1356-58 (9th Cir. 1989); *Nieto v. Sullivan*, 879 F.2d 743, 749-54 (10th Cir. 1989), *cert. denied*, 493 U.S. 957, 110 S. Ct. 373, 107 L. Ed. 2d 359 (1989); *Douglas v. Wainwright*, 739 F.2d 531 (11th Cir. 1984) (per curiam), *cert. denied*, 469 U.S. 1208, 105 S. Ct. 1170, 84 L. Ed. 2d 321 (1985). Importantly, even though a substantial reason, rather than an overriding interest, may justify the partial closure of the courtroom, the rest of *Waller*'s requirements must be addressed. A

---

2.  Partial closure versus total closure of a courtroom is described by the 11th Circuit Court of Appeals in *Douglas v. Wainwright*:

> The most important distinguishing factor is that *Waller* involved a total closure, with only the parties, lawyers, witnesses, and court personnel present, the press and public specifically having been excluded, while *Douglas* entailed only a partial closure, as the press and family members of the defendant, witness, and decedent were all allowed to remain. Moreover, the closure in *Waller* was for the entire seven days of the suppression hearing although the playing of the disputed tapes lasted only two-and-one-half hours, whereas in *Douglas* the partial closure was limited to the one witness' testimony. *Douglas,* therefore, presented this court with a fact situation different and unique from that faced by the *Waller* Court.

739 F.2d 531, 532 (11th Cir. 1984) (per curiam), *cert. denied*, 469 U.S. 1208, 105 S. Ct. 1170, 84 L. Ed. 2d 321 (1985).

trial court must still (1) determine that the closure is "no broader than necessary," (2) "consider reasonable alternatives to closing the proceeding," and (3) "it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216.

[¶23.] Again, although not addressed by the United States Supreme Court, some federal courts have held that "specific findings by the [trial] court are not necessary if we can glean sufficient support for a partial temporary closure from the record." *Farmer*, 32 F.3d at 371 (citing *United States v. Lucas*, 932 F.2d 1210, 1216-17 (8th Cir. 1991), *cert. denied*, 502 U.S. 949, 112 S. Ct. 399, 116 L. Ed. 2d 348 (1991)). In *Farmer*, the court held that even though there were not specific findings on the record, the "victim's age, the brutal nature of the offense and the victim's well-reasoned fear of [the defendant] was more than enough to justify the decision" to partially close the courtroom. *Id.* at 371-72.

[¶24.] In this case, Rolfe argues that his Sixth Amendment rights were violated because the trial court closed the courtroom to the general public during A.F.'s testimony without addressing the factors required by *Waller*. Rolfe's attorney was notified the evening before A.F.'s testimony that the State would invoke SDCL 23A-24-6 to close the courtroom during A.F.'s testimony.[3] On the morning of A.F.'s

---

3.  The North Dakota Supreme Court has stated that a motion to close a trial must be made prior to the trial. *See* N.D. R. Crim. P. Rule 17.1. "The reason is obvious-to avoid unfair surprise and to give the trial court the benefit of the parties' research and arguments." *State v. Klem*, 438 N.W.2d 798, 800 (N.D. 1989). South Dakota's equivalent rule, SDCL 23A-15-1, allows, but does not require, a motion for closure to be brought prior to trial. Bringing a motion to close certain testimony prior to trial would appear to be the better practice.

testimony, outside the presence of the jury, attorneys for Rolfe and the State made

brief arguments regarding closure of the trial. Judge Trimble made the following

oral ruling:

> Well, as everybody here knows, in juvenile matters we have a
> closed courtroom. Never been found to be unconstitutional when
> juveniles are involved. Those same people are allowed in the
> courtroom. Really nobody else. The outside general public are
> not allowed to be involved in juvenile matters,[4] and since this is
> a juvenile testifying, the Court will follow the statute if it's
> requested, which it is.

Judge Trimble's ruling primarily relies on the language of SDCL 23A-24-6, and he

did not make specific findings as required by *Waller* and *Delaney*.

[¶25.]    Even considering the cases that did not require specific findings

because they found the record sufficient, Judge Trimble's ruling and the record do

not address all of the factors that *Waller* requires. In addition to a determination

that there was an overriding interest, or even a substantial reason for a partial

closure, *Waller* requires a court to (1) determine that the closure of the courtroom is

"no broader than necessary to protect that interest," (2) "consider reasonable

alternatives to closing the proceeding," and (3) "it must make findings adequate to

support the closure." 467 U.S. at 48, 104 S. Ct. at 2216. Judge Trimble did not

make specific findings on whether there was an overriding interest or substantial

---

4.    Judge Trimble references SDCL 26-7A-36, which provides that juvenile
      proceedings are presumed closed to the general public, unless the court finds
      compelling reasons to open the proceedings. In general, juvenile proceedings
      are closed to protect the best interests of the child by providing anonymity
      and confidentiality, which serves the rehabilitative goals of the juvenile
      justice system. *See In re M.C.*, 527 N.W.2d 290, 293 (S.D. 1995) (citing *In re
      J.D.C.*, 594 A.2d 70, 76 (D.C. 1991) and *San Bernardino Cty. Dept. of Pub.
      Soc. Servs. v. Super. Ct.*, 283 Cal. Rptr. 332, 339 (Cal. Ct. App. 1991)).

reason to justify total or partial closure. He also did not make specific findings about the breadth of the closure or the alternatives he considered in closing the courtroom. Further, he did not address any of the factors supporting closure or partial closure for child sexual abuse victims identified in *Globe Newspaper Co.*, including the "victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." 457 U.S. at 608, 102 S. Ct. at 2621 (footnote omitted).

[¶26.] We must consider what relief should be ordered to remedy the violation of Rolfe's Sixth Amendment right to a public trial. As in *Waller*, "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." 467 U.S. at 49, 104 S. Ct. at 2217. But, the remedy should be appropriate to the violation and it does not require a new trial in this case. Rolfe's rights can be fully protected by a remand to the trial court "with direction to hold an inquiry consistent with this opinion." *Goldberg v. U.S.*, 425 U.S. 94, 111, 96 S. Ct. 1338, 1348, 47 L. Ed. 2d 603 (1976). The trial court should supplement the record with specific findings and reasoning. If, after addressing the *Waller* factors, the trial court finds that the closure or partial closure was justified under *Waller*, it may enter a new final judgment of conviction. If the trial court finds that the courtroom should not have been closed or partially closed during A.F.'s testimony, the trial court may vacate the judgment of conviction and grant Rolfe a new trial. Accordingly, we remand the case to the trial court to supplement the record with specific facts and reasons for the closure of the courtroom during A.F.'s testimony.

[¶27.] Finally, Rolfe challenges the constitutionality of SDCL 23A-24-6 because the statute does not include a requirement that the *Waller* factors be addressed on the record. The United States Supreme Court has previously held that statutes requiring *mandatory, total closure* of a courtroom when a child victim testifies about a sexual offense are unconstitutional. *Globe Newspaper Co.*, 457 U.S. at 607-08, 102 S. Ct. at 2620-21. The statute at issue here does not mandate total closure—it allows trial courts the discretion to determine if partial or total closure is appropriate when a child is testifying about a sexual offense. SDCL 23A-24-6. As noted above, the right to a public trial is not absolute. *Waller*, 476 U.S. at 45, 104 S. Ct. at 2215. This statute is not unconstitutional on its face, or as applied in this case because it allows trial courts to weigh competing interests, make specific findings to follow *Waller*, and to protect the integrity of the process with the continual presence of news media representatives.

[¶28.] **2. Whether the State had legal authority to issue subpoenas to Midcontinent Communications.**

[¶29.] We first address the issue of standing to challenge the subpoenas. In general, standing is established by being a "'real party in interest'" and "'determined by the status of the party seeking relief.'" *Arnoldy v. Mahoney*, 2010 S.D. 89, ¶¶ 18-19, 791 N.W.2d 645, 653 (quoting SDCL 15-6-17(a) and *D.G. v. D.M.*, 1996 S.D. 144, ¶ 22, 557 N.W.2d 235, 239). "'The real party in interest requirement for standing is satisfied if the litigant can show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the [other party].'" *Id.* ¶ 19, 791 N.W.2d at 653 (quoting *D.G.*, 1996 S.D. 144, ¶ 22, 557 N.W.2d at 239). In order to assert the violation of a person's constitutional right to be free from

unreasonable search and seizure, as Rolfe does here, the person asserting the right must have standing. *See State v. Westerfield*, 1997 S.D. 100, ¶ 9, 567 N.W.2d 863, 866 (citing *Rawlings v. Kentucky,* 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980)). *See also United States v. Muhammad,* 58 F.3d 353 (8th Cir. 1995). If there is a legitimate expectation of privacy, then the person has standing to challenge a search. *Westerfield*, 1997 S.D. 100, ¶ 9, 567 N.W.2d at 866 (citing *Rawlings*, 448 U.S. at 104, 100 S. Ct. at 2561). We must now determine if Rolfe had a legitimate expectation of privacy in the information that the State acquired by issuing a subpoena to Midcontinent.

[¶30.]    The United States Supreme Court held that "the Fourth Amendment does not prohibit . . . obtaining . . . information revealed to a third party and conveyed by [the third party] to Government authorities." *United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624, 48 L. Ed. 2d 71 (1976) (citations omitted). The Court further held that because there were no Fourth Amendment rights at issue, "this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated" when the subpoena is issued. *Id.* at 444, 96 S. Ct. at 1624 (citing *Cal. Bankers Ass'n. v. Shultz*, 416 U.S. 21, 53, 94 S. Ct. 1494, 1513, 39 L. Ed. 2d 812 (1974) and *Donaldson v. United States*, 400 U.S. 517, 537, 91 S. Ct. 534, 545, 27 L. Ed. 2d 580 (1971) (Douglas, J., concurring)). Specifically, there is no violation of a defendant's Fourth Amendment rights when a third party internet provider receives a subpoena and discloses the defendant's subscriber information. "Every federal court to address this issue has

held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation." *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) (citing *Guest v. Leis,* 255 F.3d 325, 336 (6th Cir. 2001); *United States v. Hambrick,* 225 F.3d 656 (4th Cir. 2000) (unpublished), affirming *United States v. Hambrick,* 55 F. Supp. 2d 504, 508–09 (W.D. Va. 1999); *United States v. D'Andrea,* 497 F. Supp. 2d 117, 120 (D. Mass. 2007); *Freedman v. Am. Online, Inc.,* 412 F. Supp. 2d 174, 181 (D. Conn. 2005); *United States v. Sherr,* 400 F. Supp. 2d 843, 848 (D. Md. 2005); *United States v. Cox,* 190 F. Supp. 2d 330, 332 (N.D.N.Y. 2002); *United States v. Kennedy,* 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000); *United States v. Forrester,* 512 F.3d 500, 510 (9th Cir. 2008); *United States v. Lifshitz,* 369 F.3d 173, 190 (2d Cir. 2004)). In addition, a number of federal courts have "rejected the argument that an individual has a reasonable expectation of privacy in his or her personal computer when file-sharing software, such as LimeWire, is installed." *United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009) (citations omitted).

[¶31.]     Here, Rolfe's email address and other personal information were obtained from Midcontinent via the subpoenas issued by the State. Rolfe provided his information to Midcontinent and he has no legitimate expectation of privacy in that information. Rolfe had no legitimate privacy interest, as required by *Westerfield*, and thus, has no standing to challenge the subpoenas issued by the State to Midcontinent.

**CONCLUSION**

[¶32.]     The trial court failed to address all of the *Waller* factors and make specific findings regarding the closure of the courtroom.  We remand to the trial court to make specific findings based on *Waller*, *Farmer*, and *Globe Newspaper Co.'s* standards for closure.  However, the trial court correctly found that Rolfe had no Fourth Amendment expectation of privacy in his IP address subscriber information because Rolfe made the information available to Midcontinent.

[¶33.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.