#26719-a-DG

**2014 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                 Plaintiff and Appellee,

    v.

JEREMY BAUER,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                            and appellee.

ELLERY GREY
Grey Law
Rapid City, South Dakota                Attorneys for defendant
                                              and appellant.

* * * *

ARGUED APRIL 29, 2014
OPINION FILED **07/16/14**

#26719

GILBERTSON, Chief Justice

[¶1.]        Appellant Jeremy Bauer was convicted by a Pennington County jury of

first-degree rape against I.T., who was nine years old at the time of the crime.  At

trial, the State moved to close the courtroom during I.T.'s testimony to all but the

parties, the media, and the State's victim-witness assistant.  Bauer's attorney did

not object.  On appeal, Bauer argues that the closure violated his right to a public

trial.  Specifically, Bauer asserts that a defendant must personally waive the right

to a public trial.  Additionally, Bauer argues that the trial court committed

reversible error by allowing the closure and that Bauer's trial counsel was

ineffective by failing to object to the closure.  We affirm.

## FACTS

[¶2.]        In April 2012, I.T., age nine, attended a birthday party at the home of

her friend, K.B.  During the party, I.T. went upstairs and laid down in K.B.'s room.

K.B.'s father, Bauer, followed I.T. up the stairs and laid down behind I.T., so that

both were facing the bedroom wall.  According to I.T., Bauer then "put his finger

down [her] pants" and "inside [her] private area."  I.T. stated that it hurt.  When

Bauer left the room, I.T. went to the bathroom.  She reported that she experienced

pain while urinating.  I.T. then went downstairs and confronted Bauer, saying he

had touched her.  Bauer denied the allegation and denied having been upstairs.

[¶3.]        A grand jury charged Bauer with alternative counts of first-degree

rape in violation of SDCL 22-22-1(1) and sexual contact with a child under thirteen

in violation of SDCL 22-22-7 and 22-22-1.2(2).  Prior to trial, the State moved to

partially close the courtroom during I.T.'s testimony.  Outside the presence of the

jury, the trial court heard arguments on this motion. The State explained that it was prepared to offer testimony to support the closure. A brief exchange then occurred between the judge and Bauer's counsel:

> **THE COURT:** [Defense counsel], what's the defendant's position on this?
>
> **[DEFENSE COUNSEL]:** Your Honor, I'd leave it in the Court's discretion. I don't have any objection to it if the Court feels there's a finding that supports it.

[¶4.] The State then explained that it had witnesses prepared to testify in favor of closure. The State asserted that its witness would explain that I.T. was only ten years old and was somewhat less mature than other girls her age. I.T.'s parents would also testify that they desired that their daughter not to have to talk about the crime in front of any more people than necessary. The State asserted that its witnesses would establish that I.T. became "somewhat emotional and reluctant to talk about the issue" and that a partial closure would make the child more comfortable and reduce the "chilling effect" on I.T.'s ability to recall and testify truthfully about the events. In sum, the State argued that a partial closure— allowing only the parties, necessary court personnel, the media, and the State's victim-witness assistant—would safeguard the psychological well-being of I.T. and keep her testimony as credible and truthful as possible.

[¶5.] When the State concluded its arguments, the court again asked Bauer's counsel if there were any objections. Counsel stated there were none. The court then asked if defense counsel wanted to hear testimony from any of the State's witnesses regarding the closure. Defense counsel stated, "No, I'm satisfied." Based on the arguments, the trial court made oral findings on the record. The court

concluded that given I.T.'s age and the nature of the crime, it would be a traumatic experience for her to testify. The court also concluded that not going forward with the closure would prejudice both the accurate presentation of evidence and the ability of the defense to properly cross-examine. The court found these to be substantial reasons for ordering the closure. The judge stated that he considered reasonable alternatives, such as testifying by video, and found that the alternatives were not practical and that the closure ordered was not broader than necessary. The trial court stated it was noteworthy that the media would be allowed to remain in the courtroom.

[¶6.]    When the State called I.T. as its first witness, the State requested the gallery be cleared of all spectators, except members of the media and the State's victim-witness assistant. Defense counsel again stated, "No objection, Your Honor." The trial transcript does not reflect how many individuals left the courtroom, but at least one person was asked to leave the courtroom after the judge learned the person was not with the media. I.T. then testified about the incident and defense counsel cross-examined her about her recollection of the incident.

[¶7.]    Later in the trial, Bauer took the stand and admitted being present in the home at the time of the crime and that he was with I.T. in his daughter's bedroom. However, Bauer denied touching or raping I.T. Bauer also denied that I.T. confronted him with the accusation when she came down the stairs from the bedroom where she had laid down.

[¶8.] At the close of the trial, the jury found Bauer guilty of first-degree rape. Bauer was sentenced to 30 years in the penitentiary, with 112 days credit for time served. Bauer appeals his conviction, raising three issues:

1. *Whether trial counsel may waive a defendant's right to a public trial.*

2. *Whether the trial court committed plain error by closing the courtroom to the general public during I.T.'s testimony.*

3. *Whether trial counsel was ineffective by failing to object to the courtroom closure.*

## ANALYSIS AND DECISION

[¶9.] 1. *Whether trial counsel may waive a defendant's right to a public trial.*

[¶10.] As an initial matter, we are asked to determine whether Bauer's trial counsel had authority to waive Bauer's right to a public trial. The parties do not dispute that defense counsel clearly stated that there were no objections to the closure. The State asserts that Bauer's trial counsel thereby properly waived Bauer's right to a public trial. Bauer contends, however, that waiver of the right to a public trial must be made personally by an informed defendant. He alleges that the trial court's failure to canvass Bauer about the closure violated Bauer's constitutional right to a public trial under the Sixth Amendment. We review alleged constitutional violations de novo. *State v. Long Fox*, 2013 S.D. 40, ¶ 11, 832 N.W.2d 55, 58 (citation omitted).

[¶11.] The United States Supreme Court has stated that "[w]hat suffices for waiver depends on the nature of the right at issue. . . . For certain fundamental rights, the defendant must personally make an informed waiver. For other rights,

however, waiver may be effected by action of counsel." *Gonzalez v. United States*, 553 U.S. 242, 248, 128 S. Ct. 1765, 1769, 170 L. Ed. 2d 616 (2008) (citations omitted). "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has— and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois,* 484 U.S. 400, 417-18, 108 S. Ct. 646, 657, 98 L. Ed. 2d 798 (1988) (citations omitted). Bauer asserts that the right to a public trial is not within the purview of counsel's authority to manage the conduct of the trial, but is instead within the class of "certain fundamental rights" that can only be waived personally by the defendant. *See Gonzalez*, 553 U.S. at 248, 128 S. Ct. at 1769.

[¶12.]     Bauer correctly notes that the United States Supreme Court has recognized that a deprivation of a defendant's right to a public trial has been held as error. *See, e.g., Waller v. Georgia,* 467 U.S. 39, 49-50, 104 S. Ct. 2210, 2217, 81 L. Ed. 2d 31 (1984). Yet, Bauer fails to cite any binding authority holding that a trial court's failure to personally canvass a defendant regarding a partial closure results in such a deprivation. The United States Supreme Court has identified several rights that cannot be waived without a defendant's personal and informed waiver. *See, e.g., Boykin v. Alabama,* 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1711-12, 23 L. Ed. 2d 274 (1969) (guilty plea must be intelligent and voluntary waiver of right to jury trial, confront witnesses, and self-incrimination); *New York v. Hill,* 528 U.S. 110, 114-15, 120 S. Ct. 659, 663-64, 145 L. Ed. 2d 560 (2000) (waiver of right to counsel and right to plead not guilty must be personal and informed) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464-465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938);

*Brookhart v. Janis,* 384 U.S. 1, 7-8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966)); *Florida v. Nixon,* 543 U.S. 175, 187, 125 S. Ct. 551, 560, 160 L. Ed. 2d 565, 578 (2004) ("A defendant . . . has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'") (citations omitted).  Bauer has not directed our attention to any case, however, in which the United States Supreme Court has placed the right to a public trial in this same category.*

[¶13.]      A unifying characteristic of the rights recognized by the Supreme Court requiring personal informed waiver is that those rights affect the defendant's ability to meaningfully participate in the judicial process and are also "of central importance to the quality of the guilt-determining process."  *State v. Butterfield*, 784 P.2d 153, 156 (Utah 1989) (holding "right to a public trial to be of a different order" than those rights requiring personal and informed waiver).  A number of courts have held that the right to a public trial is not within this category of fundamental rights permitted to be waived only by the defendant, and instead have held that the right may be waived by counsel or by a defendant's failure to object.  *See id.*; *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009) ("While we agree that the right to a public trial is an important structural right, it is also one that can be waived when a defendant fails to object to the closure of the courtroom, assuming the

---

*      The Supreme Court has not explicitly held that the right to a public trial may be waived by counsel.  In *Peretz v. United States*, however, the Supreme Court did cite *Levine v. United States*, 362 U.S. 610, 619, 80 S. Ct. 1038, 1044, 4 L. Ed. 2d 989 (1960), as standing for the proposition that "failure to object to closing of courtroom is waiver of right to public trial[.]"  501 U.S. 923, 936, 111 S. Ct. 2661, 2669, 115 L. Ed. 2d 808 (1991).

justification for closure is sufficient to overcome the public and media's First Amendment right to an open and public trial proceeding."); *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006) (holding that counsel's waiver of right to public trial is effective on the defendant, regardless of whether the *Waller* prerequisites are met); *United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir. 1949) (finding "no merit" in argument that defendant must personally waive right to public trial where defendant was present when counsel waived right).

[¶14.]     We likewise decline to place the right to a public trial within that narrow class of constitutional rights that are of such central importance to the defendant's ability to participate in the legal process that they are preserved absent personal waiver. As the Michigan Supreme Court noted:

> Indeed, each of the foundational constitutional rights that are preserved absent a personal waiver necessarily implicates a defendant's *other* constitutional rights. For example, the purpose of the right to counsel "would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution" because it is counsel's responsibility to "protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights. . . ." Because the right to counsel "invokes, of itself, the protection of a trial court," preservation of the right does not require an affirmative invocation. Similarly, a waiver of the right to plead not guilty "would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty." The right to a public trial is "of a different order" because the violation of that right "does not necessarily affect qualitatively the guilt-determining process or the defendant's ability to participate in the process."

*People v. Vaughn*, 821 N.W.2d 288, 298 (Mich. 2012) (citations omitted). We follow this same reasoning and hold that defense counsel may properly waive a

defendant's right to a public trial. Accordingly, we conclude that Bauer's trial counsel waived his right to public trial in this case.

[¶15.]     2.     *Whether the court committed plain error by closing the courtroom to the general public during I.T.'s testimony.*

[¶16.]     Bauer also asserts that the trial court committed reversible error because there was no substantial reason or compelling interest to justify the closure. The State argues that the record reflects no error because the trial court made proper findings on all of the *Waller* factors and the findings supported the limited closure ordered in this case. Because Bauer's trial counsel did not object to the courtroom closure, we review the trial court's actions for plain error. *See State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69 (citation omitted) ("Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error."). *See also* SDCL 23A-44-15 (Rule 52(b)) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court.").

[¶17.]     "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *State v. Robinson,* 1999 S.D. 141, ¶ 17, 602 N.W.2d 730, 735 (quoting *State v. Nelson,* 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443). "Plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Nelson,* 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). When plain error is alleged, the defendant bears the burden of showing the error was prejudicial. *Id.* ¶

7, 587 N.W.2d at 443 (citations omitted); *Bowker*, 2008 S.D. 61, ¶ 46, 754 N.W.2d at 70 (citation omitted).

[¶18.] If there is any error present in this case, Bauer has failed to carry his burden of proving that error is plain. To be plain error, the error must be "both obvious and substantial." *Wuest ex rel. Carver v. McKennan Hosp.*, 2000 S.D. 151, ¶ 36, 619 N.W.2d 682, 691. In this case, SDCL 23A-24-6 authorizes the court to close portions of criminal proceedings involving child testimony about certain sexual crimes against children to "all persons except the parties' attorneys, the victim or witness assistant, the victim's parents or guardian, and officers of the court and authorized representatives of the news media[.]" It also authorizes the court to close proceedings to the news media or the victim's parents or guardian if the court determines that closure is "in the best interest of the minor." *Id.*

[¶19.] Because the trial court allowed members of the media to remain in the courtroom, the closure in this case "does not implicate the same secrecy and fairness concerns" as a total closure. *See State v. Rolfe* (*Rolfe I*), 2013 S.D. 2, ¶ 22, 825 N.W.2d 901, 907 (quoting *United States v. Farmer,* 32 F.3d 369, 371 (8th Cir. 1994)). Accordingly, we treat the closure in this case as a partial closure. To order a partial closure of the courtroom under SDCL 23A-24-6, the State first must advance a substantial reason justifying the closure. *See State v. Rolfe* (*Rolfe II*), 2014 S.D. 47, ¶ 18, __ N.W.2d __ (adopting "substantial reason" standard for partial courtroom closure). The trial court is also required to satisfy the other *Waller* requirements, including: (1) making a determination "the closure is no broader than necessary" to protect the interest; (2) considering "reasonable alternatives to closing the

proceeding[;]" and (3) making "findings adequate to support the closure." *Rolfe I*, 2013 S.D. 2, ¶ 22, 825 N.W.2d at 907-08 (quoting *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216).

[¶20.] Before the trial court closed the courtroom to the general public, it made oral findings on the record regarding the closure. The trial court determined that keeping the courtroom completely open would prejudice the State's ability to accurately present evidence and the defense's ability to properly cross-examine. It also found that, given the age of the witness and the nature of the crimes, it would be a traumatic experience for I.T. to testify in front of a completely open courtroom. We are satisfied that the court could have found these to be substantial reasons justifying the closure. Under the next factor, the trial court found the closure to be no broader than necessary to protect those substantial interests. Finally, the court acknowledged that it had considered alternatives, including testifying via video and found the alternatives to be impractical. From these findings, it appears that the trial court adequately addressed and made findings on the record regarding all the *Waller* factors. Although the findings were not extensive, the findings were adequate. Accordingly, we cannot conclude from our review that the trial court committed any obvious and substantial error requiring reversal under our plain error review.

[¶21.] Although a courtroom closure affects a substantial right, Bauer also fails to convince this Court that the courtroom closure seriously affected the "fairness, integrity, or public reputation of judicial proceedings." *Robinson,* 1999 S.D. 141, ¶ 17, 602 N.W.2d at 735 (citation omitted). With Bauer present, Bauer's

counsel agreed to the partial closure—a closure authorized by statute and supported by proper findings by the trial court. Moreover, any danger to the public reputation or integrity of the judicial proceedings was minimized by allowing the media to remain in the courtroom throughout the proceedings. Given these considerations, we conclude that Bauer has failed to prove plain error.

[¶22.]    3.    *Whether trial counsel was ineffective by failing to object to the courtroom closure.*

[¶23.]    Finally, Bauer contends that his counsel rendered ineffective assistance by failing to object to the partial closure of the courtroom during I.T.'s testimony. Regarding ineffective assistance claims on direct appeal, we have stated that:

> Absent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. We depart from this principle only when trial counsel was "so ineffective and counsel's representation 'so casual' as to represent a 'manifest usurpation' of the defendant's constitutional rights." The preferred arena for an ineffective assistance claim is a habeas corpus proceeding. While there are many reasons for this rule, appellant's claims illustrate its main purpose: in habeas proceedings, attorneys charged with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review.

*State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256-57 (quoting *State v. Dillon*, 2001 S.D. 97, ¶ 28, 632 N.W.2d 37, 48).

[¶24.]    Based on the record before this Court, this case does not appear to be "one of those rare cases where an ineffective-assistance-of-counsel claim is ripe for review on direct appeal." *State v. Schmidt*, 2012 S.D. 77, ¶ 37, 825 N.W.2d 889, 899 (citation omitted). The record can be more fully developed in a habeas proceeding to allow for meaningful appellate review. *Id.*

Accordingly, we decline to address the ineffective assistance of counsel claim at this time.

## CONCLUSION

[¶25.] Bauer's defense counsel validly waived his right to a public trial by consenting to the partial closure of the courtroom during victim's testimony. Additionally, we conclude that the trial court did not plainly err in closing the courtroom during this testimony. Finally, we decline to address Bauer's ineffective assistance of counsel claim. Accordingly, we affirm.

[¶26.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.