#26724-a-DG

**2014 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JOHN A. ROLFE,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                       and appellee.

ELLERY GREY
Grey Law
Rapid City, South Dakota                  Attorneys for defendant
                                       and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 28, 2014
OPINION FILED **07/16/14**

#26724

GILBERTSON, Chief Justice

[¶1.]       A jury convicted Defendant and Appellant John Rolfe on three counts of first-degree rape of a minor and twelve counts of possessing, manufacturing, or distributing child pornography. In his first appeal, this Court determined that the trial court improperly closed Rolfe's trial to the public without making sufficient findings on the record to support the closure. We remanded the case to allow the trial court to enter supplemental findings regarding the closure. On remand, Rolfe moved for a new trial, alleging that remanding for supplemental findings was an inappropriate remedy. The trial court denied the motion. In this appeal, Rolfe alleges that the trial court on remand abused its discretion by denying his motion for a new trial and that the trial court improperly closed his trial in violation of his Sixth Amendment right to a public trial. We affirm.

**FACTS**

[¶2.]       The underlying facts of this case are set forth in *State v. Rolfe*, 2013 S.D. 2, 825 N.W.2d 901 (*Rolfe I*). Rolfe was convicted of three counts of first-degree rape of a minor, A.F., and twelve counts of possessing, manufacturing, or distributing child pornography. The trial court sentenced Rolfe to three concurrent life sentences without parole for the rape convictions and twelve consecutive ten-year sentences for the child pornography counts. On the third day of Rolfe's trial, the State invoked SDCL 23A-24-6 and requested the courtroom be closed to

-1-

members of the general public during A.F.'s testimony.[1]  Over Rolfe's objection, the trial court granted the request.

[¶3.]        On appeal, Rolfe argued that the trial court erred when it excluded the general public from the courtroom during A.F.'s testimony without addressing the factors required by *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).  We agreed, stating: "The trial court failed to address all of the *Waller* factors and make specific findings regarding the closure of the courtroom."  *Rolfe I*, 2013 S.D. 2, ¶ 32, 825 N.W. at 911.  We remanded for "the trial court to make specific findings based on *Waller, Farmer,* and *Globe Newspaper Co.'s* standards for closure."  *Id.  See also Waller*, 467 U.S. at 48, 104 S. Ct. at 2216; *United States v. Farmer*, 32 F.3d 369, 371-72 (8th Cir. 1994); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 608, 102 S. Ct. 2613, 2621, 73 L.Ed.2d 248 (1982).  Our decision instructed the trial court to "supplement the record with specific findings and reasoning" and determine whether there was an overriding interest or substantial reason to justify total or partial closure.  *Rolfe I*, 2013 S.D. 2, ¶ 26, 825 N.W. at 909.

---

1.     SDCL 23A-24-6 provides:

> Any portion of criminal proceedings, with the exception of grand jury proceedings, at which a minor is required to testify concerning rape of a child, sexual contact with a child, child abuse involving sexual abuse, or any other sexual offense involving a child may be closed to all persons except the parties' attorneys, the victim or witness assistant, the victim's parents or guardian, and officers of the court and authorized representatives of the news media, unless the court, after proper hearing, determines that the minor's testimony should be closed to the news media or the victim's parents or guardian in the best interest of the minor.

[¶4.] On remand, the trial court held a supplemental hearing concerning the courtroom closure. After the hearing, the trial court issued extensive findings of fact and conclusions of law. Based on evidence before the trial court before and during the trial, the trial court found, inter alia: 1) the courtroom closure during A.F.'s testimony was a partial closure and a complete closure of the courtroom was never requested by either party or ordered by the court; 2) at all other times throughout the trial the courtroom was completely open to the public; 3) present during A.F.'s testimony were the jurors, members of the media, A.F.'s mother, and the victim's assistant, 4) in effect, the order only excluded other members of A.F.'s family—no civil witnesses or supporters of Rolfe were present at the time the courtroom was closed, 5) "there was minimal change in the dynamic of the courtroom when A.F. testified, as compared with the rest of the trial, when the courtroom was open[;]" 6) prior to trial, the trial court had opportunity in a 404(b) hearing to observe A.F.'s demeanor and hear many details of the sexual abuse; 7) the trial court observed that A.F. was fearful of Rolfe and "highly humiliated, embarrassed, ashamed, and traumatized" by Rolfe; 8) during the 404(b) hearing A.F. "presented as childlike, innocent, and did not know certain sexual terminology used by Defense counsel[;]" and 9) A.F. appeared to be fearful of Rolfe's influence over her and her family.

[¶5.] The trial court also adopted as findings of fact much of the supplemental hearing testimony from A.F.'s counselor. The trial court found that this additional evidence from the supplemental hearing verified that A.F. was humiliated and traumatized by the abuse and that A.F. "sought to protect others

from the details of her abuse." Specifically, the trial court found that: 1) A.F. initially refused to acknowledge the sexual abuse and "only began to disclose after she discovered the Defendant was in jail, would not be getting out anytime soon, and would be unable to contact her;" 2) A.F. was psychologically immature and did not have full understanding of sexually explicit terminology; 3) each testifying member of A.F.'s family felt it was in the family's best interest that the courtroom be closed; 4) A.F. did not want to upset family members with the details of her victimization and was worried about strangers in the courtroom and that she would not be able to answer questioning as completely in an open courtroom; 5) A.F.'s counselor supported the closure of the courtroom because A.F. had difficulty detailing her victimization to anyone and was physically ill from stress and anxiety at the time of trial; 6) A.F. felt confused, betrayed, unloved, embarrassed, and guilty like she had done something to deserve the abuse; 7) an open courtroom risked further emotional and physical harm to A.F.; 8) fewer people in the courtroom made the courtroom less stressful and distracting to A.F. during her trial testimony; and 9) "an open courtroom, without any closure, during A.F.'s testimony, would not be in A.F.'s best interests, and would traumatize her further."

[¶6.] The trial court concluded that SDCL 23A-24-6 gave the trial court discretion to weigh competing interests and minimize the number of spectators while allowing for public observation of the trial through news media. The trial court also concluded that because the closure was partial, a "substantial reason" rather than an "overriding interest" had to exist to justify closure. The trial court weighed the *Globe Newspaper Co.* and *Farmer* factors, including the victim's age,

psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives. The trial court found that a substantial reason existed for closing the courtroom and that the *Waller* factors supported the partial closure.

[¶7.] Rolfe appeals, asserting that a new trial was the only appropriate remedy to cure the error in his original trial. He also argues that the trial court erred in concluding that sufficient justification existed to close the courtroom to members of the general public during A.F.'s testimony.

## ANALYSIS AND DECISION

[¶8.] I. *Whether remanding for the trial court to make specific findings was an appropriate remedy.*

[¶9.] On appeal, Rolfe first argues that the trial court should have granted his motion for a new trial because a new trial was the only appropriate remedy to the trial court error recognized by our holding in *Rolfe I*. We review a trial court's decision to deny a motion for new trial under the abuse of discretion standard. *State v. Zephier*, 2012 S.D. 16, ¶ 15, 810 N.W.2d 770, 773 (citation omitted). Rolfe contends that the violation of his right to a public trial was a structural error requiring a new trial. In essence, Rolfe argues that this Court erred in *Rolfe I* by remanding the case to the trial court to enter specific findings on the *Waller* factors after finding that a Sixth Amendment violation had occurred. He argues that the remand impermissibly gave the State an opportunity to "manufacture an after-the-fact rationale [for closure] that is constitutionally defensible." Accordingly, Rolfe argues that the trial court erred when it denied his motion for a new trial.

[¶10.]     In response, the State argues that Rolfe's motion for a new trial was an improper attempt to resurrect Rolfe's direct appeal and subvert the remand process by attacking this Court's decision in *Rolfe I*. The State also argues on the merits that the remedy ordered in *Rolfe I* was appropriate.[2] However, we need not answer the question of whether a remedy short of a new trial is sufficient to address the trial court error we found in *Rolfe I*. We answered that question in *Rolfe I* when we specifically considered what relief would be appropriate and then ordered the trial court on remand to "make specific findings based on *Waller, Farmer,* and *Globe Newspaper Co.'s* standards for closure." *Rolfe I*, 2013 S.D. 2, ¶ 32, 825 N.W.2d at 911.

[¶11.]     We recently addressed the nature of our remand instructions in *State v. Piper*:

> Our directives on remittal are clear on the face of our opinions. If we affirm, the circuit court shall enter final judgment. Where we order reversal without any qualification, as in a general remand, "the mandate nullifies the judgment, findings of fact, and conclusions of law, and leaves the case standing as if no judgment or decree had ever been entered." Between these two extremes is the limited remand, for which our instructions must exactly govern. . . . "When the direction contained in the mandate is precise and unambiguous, it is the duty of the lower court to carry it into execution, and not to look elsewhere for authority to change its meaning."

---

2.     The State notes a split in authority on whether a remand for post-hoc articulation of the *Waller* factors is an appropriate remedy. Rolfe also recognizes this split in authority in his briefs. *Compare State v. McRae*, 494 N.W.2d 252, 260 (Minn. 1992) (recognizing remand as an appropriate remedy when violation of *Waller* is claimed), *and United States v. Galloway*, 937 F.2d 542, 547 (10th Cir. 1991) (same), *with State v. Cox*, 304 P.3d 327, 335 (Kan. 2013) (rejecting remand for further findings as an appropriate remedy).

2014 S.D. 2, ¶ 11, 842 N.W.2d 338, 343 (citations omitted). Rolfe's motion for a new trial was based on the argument that a new trial was the only appropriate remedy—an argument directly at odds with our decision and instructions on remand in *Rolfe I*. Because the trial court was carrying out the precise and unambiguous mandate of this Court, Rolfe's argument that the trial court abused its discretion by denying his motion for a new trial is without merit.

[¶12.]     We uphold our decision in *Rolfe I* that a remand to the trial court in order to supplement the record was an appropriate remedy. Accordingly, we conclude that the trial court did not abuse its discretion by denying Rolfe's motion for a new trial.

[¶13.]     II.     *Whether there was sufficient justification to order the courtroom closed to members of the general public during A.F.'s testimony.*

[¶14.]     Next, Rolfe argues that the trial court erred on remand by finding there was sufficient justification to close the courtroom to the general public during A.F.'s testimony. This Court reviews a trial court's findings of fact for clear error. *Rapid City Journal v. Delaney*, 2011 S.D. 55, ¶ 9, 804 N.W.2d 388, 392. We review de novo a trial court's application of law. *Id.*

[¶15.]     In *Rolfe I*, we recognized that to completely close all or portions of a trial,

> the party seeking closure of the proceeding must (1) "advance an overriding interest that is likely to be prejudiced," (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) "[the trial court] must make findings adequate to support the closure." The interest and specific findings should be articulated so that a reviewing court can make a determination about whether closure was proper.

2013 S.D. 2, ¶ 20, 825 N.W.2d at 907 (alteration in original) (citing *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216) (additional citations omitted). In *Rolfe I* we also recognized—without explicitly adopting—that the *Waller* test has been modified by some federal circuits where the courtroom was only partially closed. *Id.* ¶ 22 (citations omitted).

[¶16.] The parties disagree over whether the closure in this case was a complete closure or whether it was a partial closure. "Whether a closure is total or partial . . . depends not on how long a trial is closed, but rather who is excluded during the period of time in question." *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013) (citations omitted). In general, a partial closure "results in the exclusion of certain members of the public while other members of the public are permitted to remain in the courtroom." *State v. Garcia*, 561 N.W.2d 599, 605 (N.D. 1997) (citation omitted). A partial closure "does not raise the same constitutional concerns as a total closure, because an audience remains to ensure the fairness of the proceedings." *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995) (citation omitted). Although the trial court excluded members of the general public, the trial court allowed Rolfe, the parties' attorneys, the victim's mother and advocate, courtroom personnel, and representatives of the media to remain in the courtroom.[3] Because the courtroom remained open to the representatives of the media, the

---

3. The trial court's findings highlight the limited impact the closure had on public observation of the trial. Only members of A.F.'s own family were actually affected by the closure because there were no civil witnesses or supporters of Rolfe present at the time the courtroom was closed.

closure in this case did not "implicate the same secrecy and fairness concerns" as a total closure. *Rolfe I*, 2013 S.D. 2, ¶ 22, 825 N.W.2d at 901 (quoting *Farmer*, 32 F.3d at 371). Accordingly, we agree with the trial court that only a partial closure of the courtroom occurred.

[¶17.]     Under the first *Waller* factor, we look to the interest advanced by the State to justify closure. In order to justify a complete closure, the party seeking closure must advance an "overriding interest that is likely to be prejudiced" if the courtroom were to remain open. *Id.* ¶ 20 (quoting *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216). However, we have not determined the standard to apply when, as in this case, only a partial closure has been ordered. We now adopt the partial closure standard recognized in *Rolfe I*: "'When a trial judge orders a partial, as opposed to a total, closure of a court proceeding at the request of one party, a 'substantial reason' rather than *Waller's* 'overriding interest' will justify the closure' because a partial closure does not 'implicate the same secrecy and fairness concerns that a total closure does.'" *Id.* ¶ 22 (quoting *Farmer*, 32 F.3d at 371 (quoting *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992))); *United States v. Petters*, 663 F.3d 375, 382-83 (8th Cir. 2011); *United States v. Sherlock*, 962 F.2d 1349, 1356-58 (9th Cir. 1989); *Nieto v. Sullivan*, 879 F.2d 743, 749-54 (10th Cir. 1989), *cert. denied*, 493 U.S. 957, 110 S. Ct. 373, 107 L. Ed. 2d 359 (1989); *Douglas v. Wainwright*, 739 F.2d 531 (11th Cir. 1984) (per curiam), *cert. denied*, 469 U.S. 1208, 105 S. Ct. 1170, 84 L. Ed. 2d 321 (1985)). Thus, we examine whether the State advanced a substantial reason to justify the closure ordered.

[¶18.]      The trial court found that protecting the physical and psychological well-being of the child victim in this case was a substantial reason justifying the partial closure.[4]  In considering closure of a courtroom during a child's testimony about sexual abuse, the trial court should consider the "victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of the parents and relatives."  *See Rolfe I*, 2013 S.D.2, ¶ 25, 825 N.W.2d at 909 (*quoting Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621). The trial made specific findings regarding these considerations.  Specifically, the trial court found that A.F. was quite young—only nine years old when the abuse began and thirteen at the time of trial—and that A.F. showed psychological immaturity and lack of understanding of some of the sexual terminology used in the courtroom.  The trial court also noted the prolonged and disturbing nature of the abuse alleged.  The trial court observed that A.F. had difficulty relating her victimization to others, even to A.F.'s counselor.  A.F. feared Rolfe and his manipulation of her family, and also felt betrayed and confused.  At the time of trial, A.F. was suffering from stress-related illness including vomiting, weight loss, and trouble concentrating.  Additionally, the trial court found that A.F. sought to protect others from the horrific details of her abuse, and that A.F. was concerned she would not be able to answer questions as completely in an open courtroom.  The

---

4.      The trial court also found that this concern met the State's higher burden of proving an overriding interest.  Because we adopt the "substantial reason" standard for partial courtroom closures, we refrain from determining whether this justification constitutes an overriding interest.

-10-

trial court also found that the family wished the courtroom to be closed during A.F.'s testimony.

[¶19.]     Examining the trial court's findings of fact and conclusions of law, we are convinced that the trial court adequately addressed the factors we listed in *Rolfe I* that would support partial closure of a courtroom during a child's testimony concerning child sexual abuse. Given the physical and emotional condition of the child victim in this case, the nature of the crime, and the wishes of the child and her family, the trial court concluded that the well-being of the child victim in this case justified the partial courtroom closure. We agree that there was a substantial reason in this case to justify the closure.

[¶20.]     As we noted in *Rolfe I*, even though partial closure may be justified by a substantial reason, "the rest of *Waller's* requirements must be addressed." *Id.* ¶ 22. Under the second *Waller* requirement, "the closure must be no broader than necessary to protect that interest[.]" *Id.* ¶ 20 (citation omitted). The trial court concluded that the limited courtroom closure in this case was no broader than was necessary to protect the substantial interest advanced by the State. The partial closure in this case was only in effect during A.F.'s testimony. During the rest of the trial, the courtroom was fully open to the general public. Although the courtroom was closed to general spectators during A.F.'s testimony, the trial court concluded that allowing media access to the courtroom during protected societal and constitutional interests.[5] We agree that the closure in this case was narrowly

---

5.    *See State v. Drummond*, 854 N.E.2d 1038, 1055 (Ohio 2006) (noting that media presence helps safeguard right to a public trial).

constructed to protect the interest at stake by reducing the number of general spectators who would have a negative impact on A.F.'s well-being and her ability to freely share the details of the crimes. We therefore conclude that the trial court adequately addressed the second *Waller* requirement.

[¶21.]     Next, the trial court addressed the third *Waller* requirement by considering alternatives to the closure ordered in this case. *See Rolfe I*, 2013 S.D.2, ¶ 20, 825 N.W.2d at 907 (citation omitted). The trial court indicated that it had considered leaving the courtroom completely open, completely closing the courtroom, having the victim testify via closed-circuit television, and having media and interested members of the public having only video or audio access to the courtroom. The trial court concluded that leaving the courtroom completely open was not appropriate given the nature of the crimes and concerns about the victim. The trial court concluded that having the victim testify via closed-circuit television potentially violated Rolfe's right to confrontation. *See United States v. Bordeaux*, 400 F.3d 548, 554 (8th Cir. 2005) ("[A] 'confrontation' via two-way closed circuit television is not constitutionally equivalent to a face-to-face confrontation."). The trial court also concluded that closing the courtroom to the entire public except through audio or visual access was a broader closure than that ordered, and that it held greater potential to prejudice Rolfe's right to a public trial. Given these considerations outlined by the trial court, we are convinced that the trial court adequately weighed alternatives to the closure ordered in this case.

[¶22.]     Turning to the final *Waller* requirement, we note that the trial court on remand followed our directive in *Rolfe I* to make findings of fact and conclusions of

law regarding the *Waller*, *Globe Newspaper Co.*, and *Farmer* standards for court closure. Armed with these extensive findings of fact and conclusions of law in this appeal, we now conclude that the trial court record adequately supports the closure ordered in this case.

## CONCLUSION

[¶23.] The remedy ordered by this Court in *Rolfe I* was appropriate to cure the constitutional violation alleged. Therefore, the trial court did not abuse its discretion by denying Rolfe's motion for a new trial. Upon reviewing the trial court's findings of fact and conclusions of law, we conclude that the partial closure ordered in this case was appropriate. Accordingly, we affirm.

[¶24.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.