EDMUND F. RICHARDS, *Adm'r*

*v.*

MILLER NORTH BROAD TRANSIT COMPANY.

*William H. Sleeper* and *Wayne J. Mullavey* (*Mr. Mullavey* orally), for the plaintiff.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the defendant.

JOHNSTON, C. J. The four issues that the defendant asked to have withdrawn from the jury were properly submitted.

Revised Laws, c. 119, s. 21, is as follows: "APPROACHING BUSSES, ETC. The driver of any motor vehicle approaching or passing a motor bus, streetcar, or other vehicle used for transporting passengers, which has been stopped to allow passengers to alight or embark, shall slow down his vehicle and, if necessary for the safety of the public, bring it to a full stop." It is true that the truck slowed down to about twenty miles an hour, but the statute contemplates slowing down to the extent that a reasonable driver would under the circumstances and bringing the motor vehicle to a full stop if a driver in the exercise of due care would have done so under such circumstances.

It is true that the driver Carpenter only saw certain children get off the school bus and some walk towards the house. But it could be found that he was inattentive in failing to notice what Mr. Jackson seated on his right did, the two walking half the length of the bus to its rear. It could be found that Mr. Carpenter was eating ice cream that had been purchased in Exeter at the time. The issue of inattention was properly left to the jury.

If the driver had noticed, as it could be found that he should have, the children going towards the rear of the school bus, it would be reasonable to hold that he should have anticipated their crossing the highway. Even without the actual observation of the children going to the rear, it could be found that the driver not knowing how many children got off and where they were should have anticipated the danger of children coming around the rear of the bus for the purpose of crossing the highway. As any children went back the oncoming truck would be hidden from their view by the bus until they got to the end and emerged from the rear. Defendant's request for instructions number 11, to the effect that the driver Carpenter was not obliged to anticipate what happened, was correctly denied. *Tullgren* v. *Company*, 82 N. H. 268, 276.

Since it could be found that the driver should have anticipated that children might be crossing the highway, it could be found either that he should have slowed the truck sufficiently so that he could have stopped on seeing the girl emerge as he passed the bus or that he should have stopped just short of passing the bus until he knew that any children were not being endangered by him. The statute does require actual stopping when necessary. Slowing down properly, perhaps to a roll of the wheels, may have been sufficient. The truck was 2 or 3 feet from the middle line. The lanes of cement were 10 feet wide. The left wheels of the bus were 5 to 6 inches on the concrete highway. The bus was almost 8 feet wide. If the truck had passed at a properly reduced speed, the driver would have had for stopping the time while the girl was going from 10 to 18 feet, the exact distance depending upon where she was in the rear of the bus when the driver saw her. If the jury was of the opinion that slowing down was not a sufficient precaution, then it could find that the driver should have brought the truck to a full stop. The issue of the violation of the statute was properly submitted. *Manor* v. *Gagnon*, 92 N. H. 435. The latter is also a case of a collision between a pedestrian and the side of a motor vehicle.

From what has been said with respect to a violation of the statute

relative to approaching busses, it follows that the issue of excessive speed was properly left to the jury. The speed statute (R. L., c. 119, s. 29) requires that speed shall be reasonable under the circumstances. Here it could be found that the truck should have proceeded past the bus at such a low speed that it could have been stopped practically instantly on sight of the child; that the speed of 20 miles an hour was too great, even if a stop was made in 15 feet.

The issue of whether a horn was blown was correctly submitted. There was evidence both ways. It was for the jury to say whether any failure was causal. *Grogan* v. *York*, 93 N. H. 184, 188.

The defendant claims that the child Jacqueline was guilty of contributory negligence as a matter of law. She was seven years of age in the first grade at school. Her brother testified that they looked both ways and didn't see anything coming. The look so far as the sister was concerned was ineffective but the plaintiff is entitled to have the jury make allowance for her age, experience and stage of development in applying to her conduct the standard of reasonable care. *Shimkus* v. *Caesar*, 95 N. H. 286, 288. In *McCarthy* v. *Souther*, 83 N. H. 29, 31, it was held that the fact that the deceased ran into the side of a car was not a conclusive circumstance on the question of contributory negligence.

Since there was evidence of causal negligence and it could be found that the child used as much care as one of her age and development, the motions for a nonsuit and for a directed verdict were properly denied.

Defendant's request that an instruction be given relating to the emergency doctrine was properly refused. No claim is made that the driver Carpenter after he caught sight of Jacqueline was affected by the emergency. He stopped in 15 feet and pulled slightly to his right. The westerly end of his 14 foot brake mark was 6 ½ feet easterly of a point opposite the steps leading to the Elms. During the emergency he exercised due care. His negligence was prior to the emergency. *Frost* v. *Stevens*, 88 N. H. 164, 166; *Hill* v. *Company*, *ante*, 14, 16.

The exceptions to the admission of evidence are overruled. A doctor was asked, subject to exception, whether the child was struck from the right or the left side. The answer that "whatever caused the injuries must have been on the right side of the child," is within a doctor's knowledge and experience. A question whether a horn was sounded was proper whether it called for what the witness heard or his opinion of the fact.

Various exceptions were taken to portions of the argument of

plaintiff's attorney. Two of the witnesses for the plaintiff stayed at the house of the attorney during the trial. This fact was properly commented on by defendant's counsel. In reply the attorney for the plaintiff argued that because he did this he must have felt "that he was lacking in a real straightforward defense here." This was not an assertion of a fact not in evidence (*Salvas* v. *Cantin*, 85 N. H. 489, 491) but argument concerning the confidence of the opposing counsel in his case. *Martel* v. *White Mills*, 79 N. H. 439, 443; *Amundsen* v. *Company*, *ante*, 85. As such it undoubtedly misled no one. It was in reply to argument of opposing counsel and not unfair argument on the preparation or presentation of the case of opposing counsel, as in *Mann* v. *Company*, 90 N. H. 1. While such arguments that do not rely on the merits of the case are to be discouraged, it was within the discretion of the Court to find as it did that the argument of counsel for the plaintiff was not unfair and not prejudicial. *Martel* v. *White Mills*, *supra*, 443.

It was asserted in argument that Mr. Jackson had the truck in charge and that the other driver was a helper. The defendant anticipated that it would be claimed that the former was responsible for the conduct of the latter and objected and excepted. But the only argument made, after admonition from the Court, was that Mr. Carpenter undoubtedly saw what Mr. Jackson did. No improper use was made of the assertion that the former was a helper rather than a relief driver. The misappellation, if it was such, came to nothing.

It was argued that the girl had time to know that the van was coming down upon her. The Court immediately ruled out conscious suffering as an element of damages and made it so clear that the plaintiff took an exception. Again in the charge, the jury was instructed that it should award nothing on account of any mental or physical pain suffered by Jacqueline Hubbard. The law could not have been misunderstood. Instructions to the jury are presumed to have been heeded by them.

It was stated in argument that the girl's shoe was left in the road "as a mute symbol of the reckless and careless and heedless conduct of this representative of the tractor company." This was withdrawn by counsel for the plaintiff and the Court instructed the jury to disregard what was "said about the shoe in the road." In view of the denial of the motion to set aside the verdict, the exception is overruled. *Heilman* v. *Whalley*, 90 N. H. 215, 219. The fact whether the shoe belonged to the girl, had no bearing on any disputed issue in the case.

Also, an argument that the fact that the child was killed was evidence that no horn was blown, was withdrawn from the jury by both counsel and Court. The exception is overruled.

With respect to all exceptions to the argument of plaintiff's attorney, it should be borne in mind that the Court denied the defendant's motion to set aside the verdict in which motion it was alleged that "the argument of the counsel for the plaintiff was unfair, unwarranted and prejudicial, and created sympathy on behalf of the plaintiff and bias against the defendant." This denial is equivalent to a finding that the argument objected to did not render the trial unfair.

The Court denied the defendant's motion to set the verdict aside because the damages were excessive. In *Hanson* v. *Blake*, 92 N. H. 396, the estate of an eleven year old boy was awarded the sum of $6,035.33, and the verdict was sustained in this court in spite of a motion to set it aside as excessive.

According to the evidence introduced, the deceased had an expectancy of life of 50.8 years. In *Dillon* v. *Company*, 73 N. H. 367, it was decided that in the case of a married woman earning capacity might be shown by the probability of the rendition of valuable household services. It cannot be said as a matter of law that the amount of the verdict is excessive as compensation for the loss of what it could be found that this girl after becoming 21 years of age would have furnished out of her earnings after deducting the expense of her own living for those naturally dependent upon her during her lifetime and for those receiving her estate at her decease.

*Judgment on the verdict.*

All concurred, except that upon the issue of damages DUNCAN, J., concurred in the result.