Rockingham
No. 97-257

THE STATE OF NEW HAMPSHIRE

v.

CHANEL J. COTE

February 25, 1999

*Philip T. McLaughlin*, attorney general (*Richard J. Lehmann*, attorney, on the brief and orally), for the State.

*Paul J. Garrity*, of Londonderry, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Chanel Cote, appeals his conviction on two counts of aggravated felonious sexual assault. *See* RSA 632-A:2, II (1996). He contends that the Superior Court (*McHugh*, J.) erred by: (1) granting the State a recess to refresh the recollection of the ten-year-old victim; (2) permitting the prosecutor during closing argument to argue facts not in evidence; (3) refusing to give the jury an accident instruction; and (4) excluding the public from a post-trial hearing on a motion to set aside the verdict. We affirm in part and remand.

The following facts were adduced at trial. The defendant attended Our Lady of Mount Carmel Church (church) in Methuen, Massachusetts, and trained children who wished to become altar servers. He first met the young victim in 1992 when he was training the victim's sister. Over time, the defendant and the victim's family

became friends. In June 1993, the victim, then age seven, began visiting the defendant at his home in Salem, and on several occasions, he spent the night. During a June 1993 visit, the defendant touched the victim's genitals while the victim was in the bathtub (first assault). In July of that same year, the defendant repeated the same act while the victim was in the shower (second assault). Following the second assault, the defendant threatened to hurt the victim if he informed anyone about the touching. After a three-day trial, the jury found the defendant guilty on both counts of aggravated felonious sexual assault.

## I

We first address the defendant's argument that the trial court erred in granting the State a recess to refresh the victim's recollection about the second assault. The defendant asserts that the victim twice responded unequivocally "no" to questions from the prosecutor on whether there was a second "bad touching." He argues that the victim was not confused or uncertain and thus there was no justification for his recollection to be refreshed.

The record reflects the following colloquy about the second assault during direct examination:

| [STATE]: | And on that time that you stayed over, did any bad touching happen? |
|---|---|
| [VICTIM]: | Um, I don't . . . (Stopped talking) |
| [STATE]: | The week before you went to the Water Country . . . |
| [DEFENSE]: | I'm sorry. I couldn't hear. Did he say . . . |
| [STATE]: | I believe he said no on the second time. Now, . . . the week before you went to Water Country, did you go on a sleepover at Mr. Cote's house? |
| [VICTIM]: | I don't know. |
| [STATE]: | Okay. Was there ever a time in July that something happened when you were in the shower? |
| [DEFENSE]: | Objection, leading. |
| [THE COURT:] | Yeah. Why don't you rephrase the question. |

[STATE]: Was there another time in the bathroom that bad touching took place?

[VICTIM]: Um . . .

[DEFENSE]: That's asked and answered. He already said no.

[THE COURT:] No. I think it's a different question, and I think it's permissible. So he can answer that one.

[VICTIM]: No.

[STATE]: Do you remember talking to Detective Cavanaugh about what had happened to you?

[VICTIM]: Yes.

[STATE]: And do you remember telling Detective Cavanaugh . . .

[DEFENSE]: Objection. Leading, hearsay.

[THE COURT:] Well, it is for the purpose of refreshing a recollection, not for the truth, however. Why don't you . . .

[DEFENSE]: He's already—he's already given an answer.

[STATE]: He may say he doesn't remember.

[THE COURT:] Well, why don't you come up for a minute.

After a bench conference, the trial court declared a recess. Subsequently, the victim resumed his testimony and testified about the second assault.

Although the bench conference was not recorded, the court held a chambers conference after the close of the evidence to reconstruct it. The court recited the prosecutor's argument that the victim's response to his questions about the second assault was a complete surprise in light of prior interviews. The court then documented its basis for allowing the recess:

I think it's undisputed that the child was extremely nervous, was confused about some very basic issues, was relatively quiet, waited a long time before responding to

any question, sometimes questions had to be asked — several different questions had to be asked before any response was given, and in light of the young man's age, I felt that a break and an opportunity to review the statements was appropriate.

After giving counsel the opportunity to record their arguments, the court further explained its reasoning, stating in part:

I think I've got to make the judgment, based upon what I see in the demeanor of the witness, to indicate whether or not the "No, No" is a definitive, well-thought-out "No, No" or whether or not it's the product of "Get me out of this quickly and maybe if I say 'No,' I can leave this room without being asked any more questions."

It is well-settled that counsel can use a prior written statement to stimulate the recollection of a witness who demonstrates a doubtful memory while testifying. *See* N.H. R. EV. 612; *see also State v. Slocinski*, 89 N.H. 262, 265, 197 A. 560, 562 (1938). The trial court is in a unique position to review the demeanor of witnesses and thus retains the discretion to determine whether a witness lacks present recollection. *See* 1 J. STRONG, MCCORMICK ON EVIDENCE § 9, at 34 (4th ed. 1992).

■ In this case, the record supports the trial court's decision to permit a recess for counsel to refresh the young victim's recollection of the second assault. Admittedly, if the victim's responses to the prosecution's direct inquiries concerning the second assault are viewed in isolation, it may appear that the victim clearly denied that a second "bad touching" occurred. A review of the victim's direct testimony as a whole, however, supports the trial court's conclusion that the victim's negative response was a means of terminating traumatic testimony and did not represent a definitive recollection. Accordingly, we cannot say that the trial court abused its discretion in determining that the victim demonstrated a sufficient doubtful memory to justify a recess to stimulate his recall.

The defendant further argues that the trial court's ruling that the victim lacked recall was fundamentally flawed because it erroneously assumed that the prosecutor's question inquired whether *"anything happen[ed]* . . . in the shower" (emphasis added), rather than whether any "bad touching" occurred. With this as the assumed question, the trial court reasoned, in part, that it knew that at least "something had happened in th[e] shower," and thus the victim's negative response "couldn't be correct," due to the defen-

dant's admission to the police that the two had showered together and had been in close contact.

██ We decline to review this specific argument, however, because defense counsel not only failed to bring the court's apparent mischaracterization of the pertinent question to its attention, but also advanced the precise mischaracterization when stating his objection to the recess. *See State v. Seymour*, 142 N.H. 620, 625-26, 707 A.2d 130, 133-34 (1998) (issue unpreserved where counsel failed to object or correct court's misperception of requested jury instruction). Specifically, defense counsel stated: "I think what my objection was, that [the victim] had been asked twice 'Did *anything happen* in the shower?' He said 'No' twice, definitively. He didn't say 'I don't remember, I don't recall.'" (Emphasis added.) Accordingly, the defendant cannot assert error on appeal.

## II

We next address the defendant's argument that the prosecutor offered facts not in evidence during closing argument and thus improperly bolstered the victim's credibility. Specifically, the defendant points to the prosecutor's statements concerning a conspiracy, as well as his comments about remuneration and ethical obligations. The defendant also claims that the prosecutor's conspiracy statement violated his right to a fair trial.

In closing argument, the prosecutor stated:

> As a prosecutor, I have an ethical obligation to present evidence that not only is true, but it's just and it is fair.

> [Defense counsel] has made implications through his closing argument that there is a giant conspiracy going on here, not only involving [the victim's mother and family], but also Detective Cavanaugh of the Salem Police Department and myself as a prosecutor in this case.

> As a prosecutor, I don't receive any more money for prosecuting a case and getting a conviction than —

The defendant immediately objected and counsel for both parties approached the bench. At the bench, the court noted that the objection exclusively focused on the last statement concerning the prosecutor's remuneration. After the court sustained the objection, it discussed with the parties whether the prosecutor could "deflect the [defendant's] representation that the [victim] was coached by the prosecutor." At the court's suggestion, the prosecutor continued

his closing argument by stating: "As I was saying, as a prosecutor, I have an ethical obligation not to instruct witnesses how to testify when they take the stand." We review the defendant's argument concerning only this last statement because he failed to properly preserve his other claims of error.

To preserve an objection to closing arguments, counsel must raise it "at the time the alleged improper statement is made, or within a reasonable time thereafter." *State v. Guay*, 130 N.H. 413, 419, 543 A.2d 910, 913 (1988) (quotation omitted). After some unrecorded dialogue at the bench, the trial court construed the defendant's objection as solely relating to the prosecutor's remuneration statement, and the defendant said nothing to correct any perceived erroneous limitation of the scope of his objection. *See Seymour*, 142 N.H. at 624, 707 A.2d at 133 (timely objection affords trial court opportunity to correct any error that may have been made). Therefore, the objection did not preserve a challenge to the propriety of the prosecutor's statements concerning conspiracy and his ethical obligation to present truthful, fair, and just evidence.

■ Further, while the defendant objected to the prosecutor's remuneration statement in a timely manner, the court sustained the objection. From the record presented, the defendant failed to request a curative instruction or any other remedy. Thus, the defendant cannot now claim error concerning the court's failure to take "corrective action." *See State v. McMinn*, 141 N.H. 636, 644, 690 A.2d 1017, 1022 (1997) (defendant bears burden to request curative instruction). Accordingly, we only consider whether the trial court erred in permitting the prosecutor to state, over the defendant's objection, that he had "an ethical obligation not to instruct witnesses how to testify when they take the stand."

The defendant essentially argues that the prosecutor enhanced the victim's credibility by impermissibly arguing facts not in evidence. We disagree. "A prosecutor may draw reasonable inferences from the facts proven, and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence." *State v. Vandebogart*, 139 N.H. 145, 160, 652 A.2d 671, 680 (1994) (quotation omitted). While counsel is afforded wide latitude in making closing arguments, counsel cannot argue facts that were not introduced into evidence. *See State v. Lake*, 125 N.H. 820, 822, 485 A.2d 1048, 1051 (1984). The trial court retains the discretion to determine whether particular areas of argument are appropriate. *See Richards v. Company*, 96 N.H. 272, 277, 74 A.2d 552, 556 (1950).

We do not agree with the defendant that the prosecutor's general reference to his ethical obligation comprised a statement of facts not in evidence. The prosecutor simply referred to a general ethical obligation and did not refer to the substance of his preparatory discussions with the victim. Thus, his statement was akin to a legal argument, not a factual representation. *See Richards*, 96 N.H. at 277, 74 A.2d at 556 (plaintiff's argument as to defendant's lack of confidence in defense not averment of fact not in evidence, but proper responsive argument); *cf. McLean v. Railroad,* 80 N.H. 252, 253, 116 A. 435, 436 (1922) (plaintiff's responsive closing statements concerning his personal integrity and his law firm's reputation for honesty comprised improper testimony of fact); *Knapp v. Stone,* 79 N.H. 32, 32-33, 103 A. 1005, 1005 (1918) (plaintiff's responsive closing statements that he did not instruct witness how to testify comprised improper testimony of fact).

■ Under the specific circumstances of this case, we cannot say that the court abused its discretion by allowing the prosecutor to generally state his ethical obligation not to instruct a witness how to testify in response to defense counsel's argument questioning the prosecutor's ethical integrity. *See State v. Boetti,* 142 N.H. 255, 262, 699 A.2d 585, 589 (1997) (trial court has latitude to permit counsel to respond to opposing counsel's closing argument). During closing argument, defense counsel emphasized that the victim initially seemed to deny any touching in the shower, then later admitted that the prosecutor told him the questions to expect and the answer he was expected to give concerning the second assault. While defense counsel did not exaggerate the precise wording of the victim's testimony during his closing, the record amply supports the trial court's finding that the victim's demeanor during cross-examination showed that "he would have almost said anything to anybody." In fact, to clarify what an otherwise "review of a cold record" may suggest, the trial court specifically noted that the victim did not testify in a "very relaxed manner." Concerned that an unchallenged assertion that the prosecutor improperly coached the victim would be "fundamentally unfair" under the circumstances of this case, the trial court permitted the prosecutor to offer rebuttal argument concerning the ethical obligation not to instruct witnesses how to testify. On the record before us, we cannot conclude that the trial court abused its discretion in permitting the prosecutor to respond to defense counsel's argument questioning the prosecutor's ethical integrity.

We do not suggest by our holding today that the State has unfettered permission to refer to its ethical obligations to counter

defense argument challenging the credibility of witnesses. The circumstances of this case, however, in which defense counsel directly questioned the prosecutor's ethical integrity based on the dubious testimony of a distraught child, sufficiently support the trial court's discretionary decision to allow the particular responsive argument at issue.

## III

The defendant next argues that he was entitled to have an accident instruction given to the jury because the victim testified that the defendant's touching was "very quick." Specifically, the defendant argues that although the trial court found the victim's testimony sufficient to merit an accident instruction, it erroneously denied the instruction on the basis that the defendant told the police he never touched the victim's genitals.

The defendant is entitled to a jury charge on his theory of defense if it is supported by "some evidence." *State v. Aubert*, 120 N.H. 634, 635, 421 A.2d 124, 125 (1980). The defendant relies solely on testimony given by the victim during cross-examination to support his claim to an accident instruction under the "some evidence" standard:

[DEFENSE]: And this touching you talked about, it was very quick, right?

[VICTIM]: Yes.

[DEFENSE]: There was no rubbing involved; just a quick touch, right?

[VICTIM]: No.

[DEFENSE]: No rubbing involved, right?

[VICTIM]: (No response)

[DEFENSE]: The touch—the touching was very quick, right?

[VICTIM]: No.

[DEFENSE]: Well, when you got out of the tub, you—you'd be wet, right?

[VICTIM]: Yes.

[DEFENSE]: And [the defendant] would give you a towel, right?

[VICTIM]:        Yeah.

[DEFENSE]:     And you'd wrap it around you, right?

[VICTIM]:        Yeah.

Before determining whether "some evidence" existed to support an accident instruction, we first address the veracity of the defendant's claim that the trial court found the victim's testimony sufficient to support the requested instruction. A review of the record indicates the trial court made no such finding.

The trial court ruled there was no "hard evidence" to support an accident instruction, and that such an instruction would only confuse the jury. In so ruling, it examined the victim's testimony, upon which the request was based, and the defendant's statement to the police. When reviewing only the victim's testimony concerning the "very quick" touching, the trial court stated:

> [I]t would really be a stretch to suggest that based upon the victim's testimony, an argument of accident could be made, but at least there's a color of an argument, I'll concede, that could be made because of the difficulty that the child had in testifying.
>
> I'm sure if [defense counsel] singled out one answer and [the State] could single out, yet, another on the issue of the length of touching, you might find a discrepancy which would enable the defense to argue that the touching could have been slight and, therefore, could have been accidental.
>
> So, in a vacuum, I think the request has *some merit*, but putting it together with the second component of the evidence, which is the defendant's statement . . . .

(Emphasis added.)

The defendant relies solely on the court's "some merit" language to conclude that absent consideration of the defendant's police statement, it found the victim's testimony sufficient to justify an accident instruction. The court, however, merely stated that the defendant's *request* for a charge had "some merit"; that is, it lacked frivolity. At most, the court determined that the defendant had a "color of an argument" concerning an accident instruction arising from the victim's testimony. After examining the court's entire statement on the subject, we do not agree that the court found that the victim's testimony provided sufficient evidentiary support for an accident instruction as a theory of defense. Therefore, we must determine whether the trial court erred in failing to give the

requested instruction, and thus whether the victim's testimony comprised "some evidence" sufficient to support an accident charge.

"The trial court . . . is not required to give an instruction on a particular defense theory when there is an insufficient evidentiary basis for the theory." *State v. Russo*, 140 N.H. 751, 753, 674 A.2d 156, 158 (1996). "Some evidence" is not satisfied by a minutia or scintilla of evidence; there must be sufficient evidence "to support a rational finding in favor of [the] defense." *State v. Jaroma*, 137 N.H. 143, 153, 625 A.2d 1049, 1055 (1993) (quotation omitted). Furthermore, a "reversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case." *State v. Plante*, 134 N.H. 456, 460, 594 A.2d 1279, 1283 (1991) (quotation omitted).

■ At trial, the defendant's request for an accident instruction was explicitly based upon the victim's testimony "that he was toweled down after the bathing and the touching was brief." Therefore, the defendant's accident defense theory is premised on inadvertent touching of the victim *following* his bath. As the State pointed out to the trial court, however, the touchings upon which the convictions were based occurred *during* bathing. Moreover, the victim's uncontradicted testimony demonstrates that the defendant gave him a towel with which he dried *himself*. Accordingly, because there was insufficient evidence to support an accident charge, the trial court's failure to give that instruction was not error. *See State v. Letourneau*, 133 N.H. 565, 569, 578 A.2d 865, 868 (1990).

Because the victim's testimony did not legally support the defendant's claim to an accident instruction, we need not address the defendant's specific claims of error concerning the trial court's consideration of his statement to the police. *See Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995) (trial court's ruling will be upheld when correct result reached and valid alternative grounds exist to reach that result).

## IV

Finally, we address the defendant's argument that the trial court violated his right to a public trial under the State and Federal Constitutions when it excluded the public from hearing the young victim's testimony on the motion to set aside the verdict. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. Because the Federal Constitution provides no greater protection than the State counterpart in this area, *see State v. Weber*, 137 N.H. 193, 196-97, 624 A.2d 967, 969 (1993), we do not engage in a separate federal analysis, *see State v. Seymour*, 140 N.H. 736, 742, 673 A.2d 786, 791, *cert. denied,* 117 S. Ct. 146 (1996).

The defendant filed a post-trial motion to set aside the verdict, claiming that the court erroneously granted the State a recess to refresh the victim's recollection of the second assault. The trial court granted the State's request to conduct an evidentiary hearing to determine whether the prosecutor inappropriately coached the victim during the recess. The court heard the victim's testimony in chambers, excluding the defendant and the public. On appeal, the defendant concedes that the court's decision to exclude *him* during the victim's testimony was supported by its findings, but asserts that the court failed to make any findings supporting exclusion of *the public*. Therefore, our review is likewise limited.

Part I, Article 15 of the State Constitution encompasses the federal Sixth Amendment right of the defendant to a public trial in all criminal prosecutions. *Weber*, 137 N.H. at 196, 624 A.2d at 969. The defendant asserts that his right to a public trial extends to post-conviction proceedings, including the hearing at issue, by relying on foreign case law involving the First Amendment right of free press. The State fails to argue and brief a contrary position; accordingly, we assume its truth for purposes of this case and leave resolution of the issue for another day. We thus turn our attention to the propriety of the partial closure.

A defendant's public trial right is not violated upon closure of a proceeding as long as: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes adequate findings supporting the closure. *State v. Guajardo*, 135 N.H. 401, 404, 605 A.2d 217, 219 (1992) (conducting a federal constitutional analysis). While the trial court's decision to close a hearing is reviewed for abuse of discretion, *see id.* at 406, 605 A.2d at 221, its findings supporting closure must be "specific enough that a reviewing court can determine whether the closure order was properly entered," *id.* at 405, 605 A.2d at 220 (quotation omitted).

The defendant asserts that the trial court failed to make adequate findings pursuant to the *Guajardo* four-prong test, and urges a remand for its application to the existing record. The State admits that the trial court failed to expressly consider the four factors, but argues the court made sufficient findings to support partial exclusion of the public. We disagree.

At the hearing on the defendant's motion to set aside the verdict, the trial court heard the young victim's testimony in chambers in

the presence of the prosecutor, defense counsel, and the stenographer, excluding the defendant and the public. The court justified closure by noting the guardian ad litem's opinion that "the victim is very reluctant to testify again," the victim's age and emotional state, and the limited focus of the hearing. The court ultimately reasoned:

> Because it's been represented that the victim is very afraid of the defendant, which, to some extent, apparently, caused some difficulty in his original testimony so that we had to take several breaks, I will exclude the defendant from this portion of the hearing so that I — in the hopes, at least, that the victim will be more relaxed and in a better mental frame of mind to be able to relate what he recalls taking place in the conference room.

In its written order denying the motion to set aside the verdict, the court revisited the closure issue and addressed only its reasoning for excluding *the defendant* from hearing the victim's testimony:

> As the Court said on the record at the time and now reiterates in the within Order, the Court feels it has the discretion to *exclude the presence of the defendant*, given the fact that what is at issue is a post-trial motion involving the specifics of a brief conversation between the victim and the prosecutor to which the defendant was not a party on the day of trial. In light of the special circumstances that this case presents, the Court sees no violation of any of the defendant's constitutional rights *by excluding him*. The reason for the exclusion was the representation to the Court by the guardian ad litem that the victim is still terrified *of the defendant* and would not be able to offer any substantive testimony *if he had to face the defendant one more time*.

(Emphasis added.)

The record reveals that the trial court exclusively focused on justifying closure to the defendant, and failed to make specific findings justifying closure to the public which would enable us to determine whether such closure was proper. Accordingly, we remand this limited issue to the trial court "for a hearing in which the court should apply the four-prong test applied in *Guajardo* to the existing record." *Weber*, 137 N.H. at 197, 624 A.2d at 970. If it is determined that the public was improperly excluded, the court shall

conduct a new hearing on the defendant's motion to set aside the verdict.

*Affirmed in part; remanded.*

All concurred.