#27125-a-SLZ

**2015 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

FREDERICK BLAIR SLOTA,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TONY L. PORTRA
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                                   and appellee.

ELLERY GREY of
Grey Law, Prof. LLC
Rapid City, South Dakota                         Attorneys for defendant
                                                   and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015

OPINION FILED **03/18/15**

#27125

ZINTER, Justice

[¶1.]     Fredrick Slota was tried on charges of first-degree rape and sexual contact involving a child.  The trial judge, on his own initiative, and without a pre-closure hearing, closed the courtroom during the victim's testimony.  Slota was convicted, and after trial the State moved to supplement the record with the reasons for the closure.  The circuit court held a hearing and entered findings of fact and conclusions of law supporting closure.  Slota appeals, arguing that his Sixth Amendment right to a public trial was violated; that the only appropriate remedy is a new trial; and, that if a new trial is not the only appropriate remedy, the State failed to present sufficient justification for the closure.  We affirm.

*Facts and Procedural History*

[¶2.]     Slota was tried on charges of first-degree rape and sexual contact with a child under the age of sixteen.  The victim, A.L., was seven years old at the time of the incident and eight years old at the time of trial.

[¶3.]     Before the trial started, the judge informed a newspaper reporter that he intended to close the courtroom during A.L.'s testimony.  No motion was made by the State or Slota requesting the closure.  Before A.L. testified, the judge announced: "The record should reflect that the courtroom has been cleared at this time."  The judge did not hold a hearing, hear argument, or enter findings regarding the closure.  The only people left in the courtroom after closure were the jury, one of A.L.'s adoptive parents, an expert witness, Slota, his counsel, and court staff.  The closure was approximately ten to fifteen minutes in length.  The public was allowed to be present for the rest of the trial.  This included the presentation of a thirty-

eight minute forensic interview of A.L., which was a more detailed account of the events than A.L.'s trial testimony. The jury found Slota guilty of both charges.

[¶4.] After trial, the State moved to supplement the record with facts and reasons for the closure, and Slota moved for a new trial based on the closure. The court acknowledged that "a mistake was made and a further record should have been made regarding [the courtroom closure] issue." The court granted the State's motion to supplement the record and denied Slota's motion for a new trial.

[¶5.] Following a post-trial hearing, the court addressed the "*Waller* factors." *See Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210, 2216, 81 L. Ed. 2d 31 (1984). The court first described the interest that would be prejudiced if the proceeding was not closed. The court found that A.L. was seven at the time of the crime, eight at the time of her testimony, and the crime involved first-degree rape. The court also found that A.L. was developmentally delayed, she was on an Individualized Education Plan (IEP), she had hearing loss, she had been subjected to prior physical abuse, she had been removed from her home on numerous occasions until her biological parents' rights were terminated, and she lacked maturity. The court further found that A.L.'s adoptive family expressed their desire that A.L. not be exposed to any more trauma through testimony at a public hearing.

[¶6.] The court then found that the closure was no broader than necessary to protect the foregoing interests. The court noted that the trial was closed only for A.L.'s testimony, which was ten to fifteen minutes in length and comprised only thirty-five of 491 pages of trial transcript. Further, the public and the media were allowed to hear A.L.'s forensic interview, which was thirty-eight minutes in length

and contained more detail about the events than her testimony at trial. The judge noted that he approached the press *sua sponte* because he wanted the media to have an opportunity to be heard if they wanted to watch A.L.'s testimony. The reporter did not subsequently request courtroom access.

[¶7.] The court finally made findings regarding alternatives to closure. The court noted that the only option that would not adversely affect Slota's constitutional rights was having A.L.'s testimony shown on closed circuit television in another room. This option, however, was not possible because the necessary technology was unavailable in that courthouse. The court ultimately indicated that its decision was not made on any individual factor. The closure was based on all the facts and circumstances.

[¶8.] Slota now appeals,[1] arguing that his Sixth Amendment right to a public trial was violated; and that because the circuit court failed to address the *Waller* factors before the closure, the only remedy is a new trial. In the alternative, Slota argues that the State did not present sufficient justification for the closure.

*Decision*

[¶9.] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. The right to a public trial is also found in S.D. Const. art. VI, § 7. ("In all criminal prosecutions the accused shall have the right to . . . a speedy public trial . . . ."). "In general, courts conduct

---

1. Slota's appellate counsel did not represent him at trial.

public trials 'for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'" *State v. Rolfe* (*Rolfe I*), 2013 S.D. 2, ¶ 17, 825 N.W.2d 901, 906 (quoting *Waller*, 467 U.S. at 46, 104 S. Ct. at 2215). "[T]he public has the right to be present whether or not any party has asserted the right." *Id.* (quoting *Presley v. Georgia*, 558 U.S. 209, 214, 130 S. Ct. 721, 724-25, 175 L. Ed. 2d 675 (2010)) (internal quotation marks omitted).

[¶10.]     The right, however, is not absolute. *Id.* ¶ 18 (citing *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606, 102 S. Ct. 2613, 2620, 73 L. Ed. 2d 248 (1982)). "'The right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care.'" *Id.* (quoting *Presley*, 558 U.S. at 213, 130 S. Ct. at 724).

[¶11.]     The Legislature has determined that a child victim testifying about sexual abuse may be one case in which the right to a public trial may give way to other interests. SDCL 23A-24-6 provides:

> Any portion of criminal proceedings, with the exception of grand jury proceedings, at which a minor is required to testify concerning rape of a child, sexual contact with a child, child abuse involving sexual abuse, or any other sexual offense involving a child may be closed to all persons except the parties' attorneys, the victim or witness assistant, the victim's parents or guardian, and officers of the court and authorized representatives of the news media, unless the court, after proper hearing, determines that the minor's testimony should be closed

> to the news media or the victim's parents or guardian in the best interest of the minor.

This statute gives the circuit court "discretion to determine who should remain in the courtroom when a child testifies about a sexual offense." *Rolfe I*, 2013 S.D. 2, ¶ 19, 825 N.W.2d at 906. Still, "the party seeking closure of the proceeding must (1) advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the [circuit] court must consider reasonable alternatives to closing the proceeding, and (4) the [circuit] court must make findings adequate to support the closure." *Id.* ¶ 20, 825 N.W.2d at 907 (quoting *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216) (internal quotation marks omitted). The court should address these requirements "before excluding the public from any stage of a criminal trial[.]" *Presley*, 558 U.S. at 213, 130 S. Ct. at 724.

[¶12.] "A violation of the right to a public trial is a 'structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Rolfe I*, 2013 S.D. 2, ¶ 14, 825 N.W.2d at 905 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991)). "'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Id.* (quoting *Fulminante*, 499 U.S. at 310, 111 S. Ct. at 1265). "We review the trial court's 'application of the law de novo, and the ultimate decision to close a court proceeding for an abuse of discretion.'" *Id.* ¶ 15 (quoting *Rapid City Journal v. Delaney*, 2011 S.D. 55, ¶ 9, 804 N.W.2d 388, 392).

[¶13.]	In this case, the circuit court recognized that it had made a mistake by not having a pre-closure hearing to determine whether the *Waller* factors justified closure.[2] The initial question is whether that error requires a new trial.

[¶14.]	In *Rolfe I* the trial judge also closed the courtroom without addressing the *Waller* factors. 2013 S.D. 2, ¶ 25, 825 N.W.2d at 909. We determined that a new trial was not the appropriate remedy. We remanded for the circuit court to "supplement the record with specific findings and reasons for the closure of the courtroom[.]" *Id.* ¶ 26. Further, in Rolfe's second appeal, after considering the remand court's findings justifying closure, we reiterated "that a remand to the trial court in order to supplement the record was an appropriate remedy." *State v. Rolfe* (*Rolfe II*), 2014 S.D. 47, ¶ 12, 851 N.W.2d 897, 902.

[¶15.]	In this case, the circuit court recognized its error, conducted a closure hearing, and entered *Waller* findings before the case was appealed. Despite our rulings in *Rolfe I* and *Rolfe II*, Slota argues that the only proper remedy is a new trial. Slota contends that a new trial is required based on a "plain reading" of *Waller v. Georgia* and *Presley v. Georgia.* However, we considered those cases in

---

2.	We are troubled by what appears to be the circuit court's *ex parte* arrangement with the media regarding closure. The media have a qualified right of access to criminal trials. *Associated Press v. Bradshaw*, 410 N.W.2d 577, 578 (S.D. 1987), *superseded by statute* SDCL 26-7A-36, *as stated in Rapid City Journal*, 2011 S.D. 55, ¶ 18, 804 N.W.2d at 395. We have previously outlined the procedure that should be followed to ensure that the parties, the media, and the public have notice of intent to close a court proceeding. "Once a request for closure has been made, the [circuit] court must assure that the interests of all parties, including the . . . [m]edia, the State, and the court, are protected. All parties must be afforded notice and a hearing before the [circuit] court makes a determination on the closure issue." *Id.* at 579.

*Rolfe I* and *Rolfe II*. Indeed, *Rolfe I* cites *Presley* for authority. *See Rolfe I*, 2013 S.D. 2, ¶¶ 17-18, 825 N.W.2d at 906.

[¶16.]     Slota alternatively suggests that this case presents an opportunity to reconsider *Rolfe I* and *Rolfe II*. Slota argues that in *Presley* "the Supreme Court did not order the case remanded for further inquiry into the merits of the courtroom closure. Had the Supreme Court believed that the structural error of improper closure could be remedied by a rehearing on the merits, the Supreme Court would have announced such." Brief for Appellant at 10. However, *Presley* did not involve the remedy for an improper closure. *Presley* involved a trial court's failure to consider alternatives to accommodate public attendance. "Nothing in the record show[ed] that the trial court could not have accommodated the public at Presley's trial." *Presley*, 558 U.S. at 215, 130 S. Ct. at 725. Thus, *Presley* does not provide guidance on remedies for closure violations. *Waller*, however, specifically indicates that a new trial is not required. In analyzing the question of "what relief should be ordered to remedy [a] constitutional [closure] violation," the *Waller* Court held that "[it did] not think [the closure violation] require[d] a new trial[.]" *Waller*, 467 U.S. at 49-50, 104 S. Ct. at 2217. Instead, "the remedy should be appropriate to the violation." *Id.* at 50, 104 S. Ct. at 2217.

[¶17.]     In *Rolfe I*, we adopted this view, concluding that "the remedy should be appropriate to the violation and it [did] not require a new trial[.]"[3] 2013 S.D. 2,

---

3.     Slota takes issue with *Rolfe I*'s citation to *Goldberg v. United States*, 425 U.S. 94, 111, 96 S. Ct. 1338, 1348, 47 L. Ed. 2d 603 (1976). *Goldberg* was cited for the proposition that "Rolfe's rights can be fully protected by a remand to the trial court 'with direction to hold an inquiry consistent with this opinion.'"

(continued . . .)

¶ 26, 825 N.W.2d at 909. In *Rolfe II*, we reaffirmed *Rolfe I*, concluding "that a remand to the trial court in order to supplement the record was an appropriate remedy." 2014 S.D. 47, ¶ 12, 851 N.W.2d at 902. Slota, however, relies on other courts for his argument that a new trial is the proper remedy for a violation of the Sixth Amendment right to a public trial. But Slota's cited authorities were presented to this Court in *Rolfe II*. Thus, Slota provides no new authority supporting his request for reconsideration of *Rolfe I and Rolfe II*.

[¶18.] Moreover, Slota acknowledges that other cases recognize a closure error may be cured by a post-hoc articulation on remand. *See United States v. Canady*, 126 F.3d 352, 364 (2d Cir. 1997) (holding that the remedy was not a new trial, but a remand for public announcement of the verdict); *State v. Rollins*, 729 S.E.2d 73, 79 (N.C. App. 2012) ("Given the limited closure in the present case and the fact that the trial court did not utilize the *Waller* four-part test, we hold that the proper remedy is to remand this case for a hearing on the propriety of the closure."); *State v. Cote*, 725 A.2d 652, 660 (N.H. 1999) (remanding for a hearing to apply the *Waller* factors to the existing record to determine if the public was improperly excluded); *Kendrick v. State*, 661 N.E.2d 1242, 1244-45 (Ind. Ct. App. 1996) (remanding for findings to determine whether defendant's right to a public trial was violated); *State v. McRae*, 494 N.W.2d 252, 260 (Minn. 1992) ("*Waller*, however,

_____

(. . . continued)
    *Rolfe I*, 2013 S.D. 2, ¶ 26, 825 N.W.2d at 909. The Supreme Court, however, also cited *Goldberg* for the same proposition. *See Waller*, 467 U.S. at 50, 104 S. Ct. at 2217 ("Rather, the remedy should be appropriate to the violation. If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest." (citing *Goldberg*, 425 U.S. at 111, 96 S. Ct. at 1348)).

made it clear that the remedy should be appropriate to the violation. If a remand for a hearing on whether there was a specific basis for closure might remedy the violation of closing the trial without an adequate showing of the need for closure, then the initial remedy is a remand, not a retrial.").

[¶19.]     Considering all relevant authority, Slota fails to provide a reason for overruling *Rolfe I* and *Rolfe II*.[4] And because this Court may remand to address the *Waller* factors, in the appropriate case, a circuit court may supplement the record before an appeal. However, closures should be preceded by motion and notice of opportunity to be heard sufficiently in advance of the hearing to permit intervention by interested members of the public. *See United States v. Alcantara*, 396 F.3d 189, 200 (2d Cir. 2005). And a closure motion, whether made by a party or a court *sua sponte*, should be filed in the public files maintained in the clerk's office. *See id.* (citing *In re The Herald Co.*, 734 F.2d 93, 102-03 (2d Cir. 1984). *See also In re S. Carolina Press Ass'n*, 946 F.2d 1037, 1039-40 (4th Cir. 1991).

---

4.     Only three of Slota's cases declined to remand. *See State v. Cox*, 304 P.3d 327, 335 (Kan. 2013) ("We . . . do not find persuasive the reasoning . . . that failure to make findings to support closure can be remedied by remand."); *Carter v. State,* 738 A.2d 871, 880 (Md. 1999) ("When we have determined that the denial of a public trial has occurred, we have held that a new trial, rather than remand to supplement the record, is the proper remedy."); *Renkel v. State*, 807 P.2d 1087, 1094 (Alaska Ct. App. 1991) ("The state has cited no post-*Globe* authority to support its contention that remand is a viable remedy. The only remedy available to this court is reversal."). We decline to follow these cases.

[¶20.] Slota also argues that the circuit court's post-hoc findings did not justify closure of the courtroom.[5] Slota contends that the reasons proffered by circuit court were general concerns that are applicable in most cases involving children who were sexually abused.

[¶21.] On a case-by-case basis, a circuit court may decide "whether closure of a courtroom is necessary to protect a child victim of sexual abuse. A [circuit] court should weigh factors such as the 'victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives.'" *Rolfe I*, 2013 S.D. 2, ¶ 19, 825 N.W.2d at 906 (quoting *Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621). "The interest and specific findings should be articulated so that a reviewing court can make a determination about whether closure was proper." *Id.* ¶ 20, 825 N.W.2d at 907 (citing *Press–Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510, 104 S. Ct. 819, 824, 78 L. Ed. 2d 629 (1984)). "'Such circumstances [where the right to an open trial gives way to other rights or interests] will be rare, however, and the balance of interests must be struck with special care.'" *Id.* ¶ 18, 825 N.W.2d at 906 (quoting *Presley*, 558 U.S. at 213, 130 S. Ct. at 724).

[¶22.] In this case, the circuit court entered numerous findings addressing the *Globe Newspaper Co.* factors for child victims of sexual abuse. The court

---

5.   A distinction has been drawn between total and partial courtroom closures. Although a "substantial reason" is needed to justify a partial closure, *Waller* requires an "overriding interest" to justify a complete closure. *Rolfe I*, 2013 S.D. 2, ¶ 22, 825 N.W.2d at 907. In this case, the circuit court "considered" its closure partial. Nevertheless, it found that "an overriding interest" was advanced by the State. Therefore, we need not determine whether the closure in this case was complete or partial.

specifically addressed the victim's age and maturity, nature of the crime, desires of the victim, and interests of the parents. The circuit court also addressed each *Waller* factor in its oral and written findings. *See supra* ¶ 5 (overriding interest); ¶ 6 (breadth of the closure); ¶ 7 (reasonable alternatives). Slota, however, argues that the circuit court was persuaded by "the ordinary hardships of a child testifying," and that those considerations do not "justify an automatic, general exclusion of the public in every case involving a young victim."

[¶23.]    The circuit court considered factors beyond the "ordinary hardships" children face when testifying about sexual abuse. The circuit court found that A.L. was developmentally delayed, was on an IEP, and had hearing problems. Moreover, A.L. had been repeatedly subjected to abuse and forcible removal from her parents' custody until her parents' parental rights were terminated. And A.L.'s adoptive father testified that it would be traumatic for A.L. to testify. The circuit court articulated factors beyond those normally associated with child testimony on sensitive issues. The court's findings demonstrated an overriding interest in closing the trial during A.L. testimony.

[¶24.]    Slota, however, also argues that this case is not as compelling as *Rolfe II*. There, we found sufficient justification for closure because:

> the trial court found that A.F.[, the victim,] was quite young—
> only nine years old when the abuse began and thirteen at the
> time of trial—and that A.F. showed psychological immaturity
> and lack of understanding of some of the sexual terminology
> used in the courtroom. The trial court also noted the prolonged
> and disturbing nature of the abuse alleged. The trial court
> observed that A.F. had difficulty relating her victimization to
> others, even to A.F.'s counselor. A.F. feared Rolfe and his
> manipulation of her family, and also felt betrayed and confused.
> At the time of trial, A.F. was suffering from stress-related illness

> including vomiting, weight loss, and trouble concentrating. Additionally, the trial court found that A.F. sought to protect others from the horrific details of her abuse, and that A.F. was concerned she would not be able to answer questions as completely in an open courtroom. The trial court also found that the family wished the courtroom to be closed during A.F.'s testimony.

*Rolfe II*, 2014 S.D. 47, ¶ 18, 851 N.W.2d at 904. Although the circuit court in this case did not make the identical findings as in *Rolfe II*, the court made sufficient findings regarding the "'victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of the parents and relatives.'" *See id.*, 851 N.W.2d at 903 (citing *Rolfe I*, 2013 S.D. 2, ¶ 25, 825 N.W.2d at 909 (quoting *Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621)).

[¶25.] Slota also argues that A.L.'s circumstances were not sufficient to justify closure under *McIntosh v. United States*, 933 A.2d 370 (D.C. 2007). In *McIntosh*, the child victim initially testified in an open courtroom. The child was timid; had to be reminded to speak louder and not to worry about the other people; had anger problems; and had limited mental capacity and other psychological problems. *Id.* at 373, 377. The court generally noted that the victim was in a vulnerable position. *Id.* at 379. The court closed the courtroom because the victim "seem[ed] to be uncomfortable with the excess people[.]" *Id.* at 375. *McIntosh* reversed and remanded for a new trial because "the court's general reference to the child's vulnerability [was] not sufficient to meet the fourth *Waller* requirement, nor [did] it show that the trial court adequately considered other important interests before ordering the courtroom closed." *Id.* at 379-80. In this case, the circuit court did more than just find that A.L. "was 'in a more vulnerable position' and was 'a

child talking about a sexual attack.'" *See id.* at 379. The circuit court made specific findings as to A.L.'s "age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *See id.* at 377 (indicating these are the factors that trial court should have considered in determining whether closure is necessary).[6] Furthermore, it was the lack of findings by the trial court, not the facts of the case that precipitated the reversal in *McIntosh*. *McIntosh* found an overriding interest in protecting that victim "from the emotional trauma that was likely to occur unless the court closed the courtroom while she testified." *Id.* That same interest is present in the case we consider today.

[¶26.] The circuit court made adequate findings addressing the *Waller* and *Globe Newspaper* factors. Those findings demonstrated an overriding interest that

---

6.   Slota cites several additional cases for the proposition that prevention of trauma or embarrassment is not enough to justify closure. Those cases are distinguishable either because those courts failed to evaluate the specific factors or there was nothing in the record to support the findings. *See State v. Hightower*, 376 N.W.2d 648, 650 (Iowa Ct. App. 1985) (rejecting closure because there was only a "mere reference to the 'sensitive nature of the testimony'"); *State v. Klem,* 438 N.W.2d 798, 802 (N.D. 1989) (rejecting public closure because there were no findings that supported closure); *People v. Holveck*, 524 N.E.2d 1073, 1083 (Ill. App. 1988) (holding that the lower court did not carefully balance interests and the individualized evaluation of factors); *Cote*, 725 A.2d at 660 (N.H. 1999) (remanding to supplement the record and rejecting public closure when the court's rationale focused on victim's fear of defendant); *Davis v. Reynolds*, 890 F.2d 1105, 1110 (10th Cir. 1989) (rejecting closure when the State was merely "trying to save [the witness] some problem and embarrassment"). In the case at bar, the circuit court articulated more than just a general reference to the sensitivity and the embarrassing nature of the testimony. There is a record that includes the necessary, individualized evaluation and the findings supporting closure.

was no broader than necessary, considering the alternatives, for courtroom closure during A.L.'s testimony.  We affirm.

[¶27.]     GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.