# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0307, <u>State of New Hampshire v. Justin Alan Belanger</u>, the court on June 18, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, Justin Alan Belanger, appeals his conviction, following a jury trial in Superior Court (<u>Howard</u>, J.), of second degree murder.  We affirm.

The jury could have found the following facts.  On June 4, 2018, police responded to an incident reported on Lafayette Street in Rochester.  A man named Lopez and a group of people, including the defendant, were taunting each other and exchanging insults.  The defendant called Lopez a "slob" and Lopez called the defendant a "crab."  As the defendant and another person attempted to cross the street to confront Lopez, one of the officers directed them to stop or they would be arrested.  Although the defendant stopped, the officer overheard him tell the other man, "He just called me a crab, and if I see him on the street, I'm going to dress him down."  The officer understood the defendant to have been referring to Lopez.

The next evening, June 5, the defendant, Devin Giles, and another man walked from Lafayette Street to downtown Rochester.  On the way, the defendant stopped at a friend's house to retrieve his pistol and, according to Giles's testimony, said that "he was going to shoot that slob."  Once on South Main Street, sometime around midnight, the group encountered Lopez, Lopez's wife, and the victim.  As the two groups passed each other, the defendant said to Lopez, "What's all that sh*t you was talking, slob?"  The defendant then turned around, and with his arm extended out at shoulder level, pointed his gun at Lopez and fired.  The victim screamed and fell, and the defendant and his companions started running.  They returned to Lafayette Street, where, according to Giles's testimony, the defendant stated that he "got the wrong person."

The victim died later that morning, June 6, as a result of a gunshot wound to the pelvis.  The defendant was indicted on two alternative counts of second degree murder.  The first alleged that the defendant knowingly caused the victim's death by shooting her.  <u>See</u> RSA 630:1-b, I(a) (2016).  The second alleged that the defendant recklessly caused the victim's death "under circumstances manifesting an extreme indifference to the value of human life by shooting her."  <u>See</u> RSA 630:1-b, I(b) (2016).  The jury returned guilty

verdicts on both counts, and the trial court sentenced the defendant on one conviction for knowingly causing the victim's death.

The defendant now appeals, arguing that the trial court erred in denying his motion to dismiss at the close of the State's case and in allowing Giles to testify by video. We address each argument in turn.

The defendant contends that the trial court erred in denying his motion to dismiss because "[t]he evidence was legally insufficient to prove the mens rea element of either indictment beyond a reasonable doubt." "A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo." State v. Stanin, 170 N.H. 644, 648 (2018).

> To prevail upon a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all reasonable conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. We consider whether the circumstances presented are consistent with guilt and inconsistent, on the whole, with any reasonable hypothesis of innocence. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. The court does not determine whether another possible hypothesis has been suggested by the defendant which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Questions about the reasonableness of theories of innocence are for the jury to decide in cases predicated upon circumstantial evidence.

Id. (quotations and citations omitted). Notwithstanding the defendant's statement that he planned to shoot Lopez, we assume, without deciding, that the evidence of mens rea in this case was, as the defendant argues, solely circumstantial. See State v. Craig, 167 N.H. 361, 379 (2015) ("Because persons rarely explain to others the inner workings of their minds or mental processes, a culpable mental state must, in most cases, as here, be proven by circumstantial evidence." (quotation omitted)).

2

We first address whether the evidence was sufficient to prove that the defendant acted knowingly. "A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." RSA 626:2, II(b) (2016). Thus, the State was required to prove, beyond a reasonable doubt, that the defendant was aware that his conduct would cause the death of another person. See RSA 630:1-b, I(a) (providing that a person is guilty of second degree murder if he "knowingly causes the death of another").

The defendant argues that the evidence taken in the light most favorable to the State is that he fired a single shot. He posits two "reasonable conclusions" other than guilt that could be drawn from the evidence. Stanin, 170 N.H. at 648. First, he argues that his "shot was not directed towards the head or the center of mass," but rather, "at a low trajectory, striking [the victim] in the hip." He therefore contends that it is reasonable to conclude that he believed the shot would cause injury, but did not know it would cause death. He also contends that it is reasonable to conclude that he "intended to frighten Lopez" and "did not know the bullet he fired would hit anyone." Evaluating the evidence as a whole, in the light most favorable to the State, we conclude that these "alternative hypothes[es]" are not "sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." Id. The evidence before the jury included the defendant's statement just prior to the murder, and after retrieving his pistol, that "he was going to shoot [Lopez]" and his statement after the murder that he "got the wrong person." It also included Giles's testimony that, after passing Lopez's group, the defendant turned around to look toward them, "had his gun out, pointed at [Lopez]," and shot. The defendant's alternative theories — that he intended only to injure or frighten — are not sufficiently reasonable to preclude a rational juror from finding that he acted knowingly. In light of this conclusion, we need not address the defendant's sufficiency challenge to the verdict finding him guilty of recklessly causing the victim's death under circumstances manifesting an extreme indifference to the value of human life.

The defendant next contends that the trial court "erred in permitting Giles to testify by video stream when he could have been transported [and] been subject to face-to-face confrontation in the courtroom." He argues that this procedure violated his confrontation rights under the State and Federal Constitutions. Under both our own and the United States Supreme Court's precedent, "the confrontation clause reflects a preference for face-to-face confrontation at trial, which must occasionally give way to considerations of public policy and the necessities of the case." State v. Hernandez, 159 N.H. 394, 403 (2009) (quotations omitted). "[I]n order to sustain an exception to a defendant's confrontation rights there must be an individualized finding that the witness in a particular case is unavailable to testify at trial." State v. Peters, 133 N.H. 791, 794 (1991). Here, the defendant challenges the trial court's finding that Giles was unavailable to testify at trial.

3

The trial court found that "both public policy and necessity support the use of a two-way livestream video feed to present Devin Giles' testimony at trial." The court noted that Giles "sustained truly life-altering injuries" in an accident in 2020. The court further found:

> He is paralyzed from the waist down and experiences significant pain and discomfort in attempting to move, or simply being touched. There is no doubt that it would require a full medical transport to bring Devin to the courtroom, and based on his current condition, he would likely have to remain in his hospital bed during live courtroom testimony.

The court concluded that "[t]he pain he would have to endure, and risk of potential aggravating injury to him, are too great to force him to go through the transportation process."

The defendant argues that there was no evidence that transporting Giles to court would potentially aggravate his injuries or cause him to endure pain. Thus, the defendant's constitutional challenge solely consists of a challenge to the trial court's factual findings. We will sustain the trial court's "factual findings unless they lack support in the record or are clearly erroneous." State v. Michelson, 160 N.H. 270, 272 (2010).

Giles's father, who lived with Giles, was his primary caregiver, and was familiar with his medical condition, testified that he was "1,000 percent" concerned for Giles's "medical safety" if he were to be transported to court for trial. He testified that "if you can get him here without killing him, then I -- I guess that's fine, but good luck trying to find somebody . . . that's going to be able to safely transport him from there to here."

The court also heard testimony from Giles and his father as to the significant pain Giles feels during attempts to be moved. In particular, Giles's legs are hypersensitive to the slightest touch, causing him to "feel[] pain right away." In addition, the court watched a video taken when law enforcement served Giles and his father with subpoenas related to this case and admitted the police reports documenting that encounter. The officer's report states that he encountered Giles laying in a bed similar to a hospital bed. It further states: "Devin showed me that the only way he could move his legs was to raise the bed. While moving the bed he appeared to be in pain. . . . Devin's condition and reaction to pain seemed genuine and legitimate."

The defendant cites isolated portions of the hearing testimony that, he contends, contradict the trial court's findings. The trial court, however, was entitled to consider the witnesses' testimony as a whole. Reviewing that testimony in its entirety, we conclude that it supports the court's findings. Cf. State v. Cote, 143 N.H. 368, 372 (1999) (upholding trial court determination

4

regarding witness recollection considering testimony as a whole, not in isolation).

We conclude that the trial court's factual findings regarding Giles's unavailability to testify in person at trial are supported by the record and are not clearly erroneous.  See Michelson, 160 N.H. at 272.  Accordingly, the defendant's confrontation clause challenge fails.

For the foregoing reasons, we affirm.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., did not participate in further review of the case after she disqualified herself.

**Timothy A. Gudas,
Clerk**